HARRY OBITZ, APPELLANT, V. AIRPORT AUTHORITY OF THE
CITY OF RED CLOUD, NEBRASKA, A PUBLIC CORPORATION,
ET AL., APPELLEES.

149 N. W. 2d 105

Filed March 3, 1967.   No. 36389.

William G. Cambridge, for appellant.

Bernard Sprague and Cline, Williams, Wright, Johnson, Oldfather & Thompson, for appellees.

Frederick A. Brown, for amicus curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The plaintiff, as a resident taxpayer of the city of Red Cloud, brought this action against the Airport Authority of the City of Red Cloud and the First Nebraska Securities Corporation to enjoin the issuance and sale of bonds in the amount of $18,000 by the Airport Authority for the reason that such issuance and sale is in violation of the Constitution and statutes of Nebraska. The trial court found for the defendants, denied the injunction, and dismissed the action. Plaintiff has appealed.

On February 4, 1965, the securities corporation sub-

mitted a bond purchase proposal to the Airport Authority for the purchase of bonds in the amount of $18,000 with interest at 3⅞ percent per annum, computed over the full life of the bonds. The proposal was accepted on the same day by the Airport Authority. The Airport Authority desires to issue and sell the bonds. On April 2, 1965, the Airport Authority adopted a resolution to issue the bonds in the amount of $18,000 for sale to the securities corporation. Before the bonds were registered or delivered, the present action was commenced.

Under the provisions of section 3-502, R. R. S. 1943, a city operating an airport is authorized to create an airport authority to be managed by a board of five members. Such board shall be a body corporate and politic, constituting a public corporation and an agency of the city establishing it. The board and its corporate existence shall continue for 20 years and until all its liabilities have been met and its bonds paid. Upon such termination of the airport authority all rights and property of the authority pass to and vest in the city. It is provided in section 3-504, subsection (12), R. R. S. 1943, that the authority shall have the power to certify annually to the governing body of the city the amount of tax to be levied for airport purposes, not exceeding one mill on the dollar upon the assessed valuation of all taxable property in the city, except intangible property, to be levied, collected, and paid to the account of the authority. By section 3-507, R. S. Supp., 1965, the authority is empowered to issue its negotiable bonds for any corporate purpose in such amounts as are required to carry out the purposes of the authority, such bonds to be general obligations of the authority payable out of any revenue, income, receipts, profits, or other money of the authority. The resolution authorizing the issuance of bonds may contain covenants and agreements by the authority to protect and safeguard the security and payment of the bonds which shall be a part of the contract

with the holders of the bonds. It is provided by section 3-509, R. R. S. 1943, that the bonds, notes, and other obligations of an authority shall not be a debt of the state or of the city in which the authority is established and shall not be paid out of any funds other than the funds of the authority.

In its resolution authorizing the issuance of the bonds, it is recited that the airport authority was lawfully created, that plans for a new landing strip have been approved by the state and the Federal Aviation Agency, and that each of the latter has made a grant to pay part of the cost of the project. The resolution further states the necessity to issue its negotiable bonds to pay its share of the cost to be called "Airport Authority of the City of Red Cloud, Nebraska Airport Revenue Bonds." By its resolution, the airport authority entered into covenants pledging that the bonds would be paid from a tax levied to the extent provided by law, together with other fees, rentals, revenue, or money of the airport authority.

It is the contention of the plaintiff that the issuance of the bonds is unlawful for the following reasons: (1) That section 3-504, subsection (12), R. R. S. 1943, is violative of Article VIII, section 7, of the Constitution of Nebraska, in that it purports to impose a tax on the city, or the inhabitants or property thereof, contrary to such constitutional provision; (2) that the pledging of the one mill tax and its covenant to levy such tax until the bonds are fully paid constitute an obligation of the city contrary to section 3-509, R. R. S. 1943; (3) that the pledging of the one mill tax is not a pledge of revenue, income, receipts, profits, or other money of the airport authority within the meaning of section 3-507, R. S. Supp., 1965, and therefore exceeds the authority given by the statute; (4) that the pledging of the tax on the property within the city to the maximum provided by law until the bonds are fully paid is in violation of section 3-507, subsection (3)(a), R. S. Supp., 1965, and

section 3-509, R. R. S. 1943, and sections 18-1502, 18-1503, and 18-1505, R. R. S. 1943; (5) that section 3-504, R. R. S. 1943, contravenes Article XIII, section 2, of the Constitution of Nebraska, prohibiting donations to works of public improvement without a vote of the people of the city; (6) that the Airport Authority Act amends sections 18-1502, 18-1503, and 18-1505, R. R. S. 1943, without repealing the sections so amended contrary to Article III, section 14, of the Constitution of Nebraska; and (7) that the Airport Authority Act delegates legislative power to the airport authority in violation of Article II of the Constitution of Nebraska, and deprives plaintiff of his property without due process of law contrary to Article I, section 3, of the Constitution of Nebraska, and takes the property of the plaintiff without just compensation contrary to Article I, section 21, of the Constitution of Nebraska. For the above reasons, plaintiff contends the applicable Airport Authority Act is unconstitutional and, if not, the proposed issuance of bonds is not authorized by the act and should be held void because of a fatal noncompliance therewith.

The Airport Authority is a public corporation and an agency of the city. Its creation is for a public purpose. The bonds issued are to be used in paying for land taken by the authority by eminent domain. Grants of funds by the state and federal governments have been approved and together with the proceeds derived from the bonds constitute the full payment price of the land. The authority uses its income from rentals, charges, and sales to maintain and operate its airport. In addition thereto it is authorized to certify to the city an amount not exceeding one mill on the dollar of the assessed valuation of the property in the city, except intangible property, to aid in the cost of operating the airport. The city makes the levy, collects the tax, and pays it to the authority as a part of its ministerial duties required by law.

An airport authority is a proprietary activity and

not a governmental one, even though it is a public corporation engaged in a public purpose. Brasier v. Cribbett, 166 Neb. 145, 88 N. W. 2d 235, and cases therein cited. In Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., 137 Neb. 871, 291 N. W. 558, this court said: "The powers granted to a municipal corporation can be divided into two general classes,—the one including those which are legislative, public or governmental, and import sovereignty; the second, those which are proprietary or quasi private, conferred for the private advantage of the inhabitants and the city itself as a legal entity. Where the legislature creates a separate municipal corporation to perform the functions of a city usually regarded as proprietary, such municipal agency is just as much engaged in proprietary functions as if the city was doing it itself."

It is provided by Article VIII, section 7, of the Constitution of Nebraska, as follows: "Private property shall not be liable to be taken or sold for the payment of the corporate debts of municipal corporations. The Legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes."

It is contended that section 3-504, subsection (12), R. R. S. 1943, is in violation of the foregoing constitutional provision. The statute provides: "Any authority established under the provisions of this act shall have power: * * * (12) To certify annually to the governing body of the city the amount of tax to be levied for airport purposes, not to exceed one mill on the dollar upon the assessed valuation of all the taxable property in such city, except intangible property, and the governing body shall levy and collect the taxes so certified at the same time and in the same manner as other city taxes are levied and collected, and the proceeds of such taxes when due and as collected shall be set aside and deposited in the special account or accounts in which other revenues of the authority are deposited; Provided,

the provisions of this subdivision shall not apply to cities of the metropolitan class; * * *."

The powers of the Legislature are divided into two general classes, governmental and proprietary, or, as otherwise sometimes described, the police power and the corporate power. The proprietary power is a corporate power, and is the power to which the Constitution of Nebraska by Article VIII, section 7, refers when it states that the Legislature shall not impose taxes upon municipal corporations, its inhabitants or property, for corporate purposes. It is the law of this state that the proprietary interests of a city may not be supported by taxation unless authorized by local authority. On this point, it was held in Campbell County v. City of Newport, 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D 791: "Under section 181a of the constitution the legislature has no power to levy a tax on local communities for local purposes, but may authorize such communities to tax themselves."

This question was resolved in Metropolitan Utilities Dist. v. City of Omaha, 112 Neb. 93, 198 N. W. 858. In that case, the Legislature created the Metropolitan Water District of the city of Omaha, which included the city of Omaha and neighboring cities and towns. In 1919, the act creating the water board was amended, which amendment contained the following provision: "Said district shall also lower water mains and reset hydrants at their original locations whenever necessary: Provided, that the cost thereof shall be paid by the respective municipalities." In 1921, the name of the water district was changed to Metropolitan Utilities District and it controlled the water system of Omaha and a gas system which had been acquired by condemnation. It became necessary that certain gas and water mains be lowered and hydrants reset. The utilities district performed the work and then sought recovery therefor from the city. The city contended that the statute requiring the city to pay such cost was in violation of

Article VIII, section 7, of the Constitution of Nebraska. In sustaining the invalidity of the statute, the court said: "In this case, we are of the opinion that the phrase, 'for corporate purposes,' as used in the constitutional provision above quoted, does not include purposes and activities designed, in the main, to aid or assist the state in carrying out its governmental activities, functions and policies, but is limited to those municipal activities designed, in the main, for the principal or exclusive benefit of the municipality, of its citizens and inhabitants. The legislative act, seeking to impose upon metropolitan cities the burden of paying the cost of lowering gas and water mains and resetting of hydrants, violates section 7, art. VIII of the Constitution, and is therefore invalid."

The Metropolitan Utilities District case makes it clear that the Legislature may impose taxes on a municipality for the purpose of carrying out the governmental powers of the city. Local authorities cannot be permitted to determine for themselves whether or not they will contribute through taxation to the support of local government generally involving the expenses of municipal government and the police power delegated to it. In preserving the peace, or maintaining a fire or police department, or improving its streets, or other strictly governmental functions, the state may exercise compulsory authority. In the levying of taxes for such governmental purposes of general concern, the municipality cannot demand a right to be consulted as its consent is immaterial.

But municipalities have other objects and purposes, purely local, in which the state at large is no more concerned than it is in the private concerns of its citizens, except in conferring power and regulating its exercise. These powers are spoken of as proprietary or corporate, and are usually placed on the same footing as private corporations. It is the exercise of these powers which the Legislature may not force upon a municipality or impose taxes upon it, its citizens, or property without

local consent. The purpose of Article VIII, section 7, of our Constitution, was to inhibit the Legislature from imposing taxes upon municipalities, its inhabitants, or property, for such corporate purposes. People ex rel. Board of Park Commissioners v. Common Council of Detroit, 28 Mich. 228, 15 Am. Rep. 202.

A municipality is a creature of the Legislature and derives its powers from that source. It has no power to levy taxes in the furtherance of its local concerns unless such power has been delegated to it. Section 3-504, subsection (12), R. R. S. 1943, authorizes the airport authority to impose a tax in a maximum amount of one mill on the tangible property of the city. The authority is a separate entity, an agency of the city, and, in matters pertaining to the airport, has the same authority that a city would have in dealing therewith. The section of the statute under discussion does not impose a tax on the local authority, but merely authorizes the local authority, in its discretion, to tax itself by levying a tax on the tangible property of the city. Such a tax is not in violation of Article VIII, section 7, Constitution of Nebraska, nor does it violate Article I, sections 3 and 21, Article II, or Article VIII, section 1, Constitution of Nebraska, nor the Fourteenth Amendment, section 1, to the Constitution of the United States.

The resolution of the board of the airport authority, providing for the issuance of the bonds, contains the following provisions: "The Airport Authority of the City of Red Cloud, Nebraska covenants that while the bonds authorized hereunder or any of them remain outstanding or unpaid, that it will certify to the Governing Body of the City of Red Cloud, Nebraska, as long as any Bonds issued herein are outstanding, a tax to the maximum extent provided by law, and that the Authority further covenants that it will from time to time establish, maintain and collect fees, rentals and other charges for the use and occupancy of the facilities and for all services, which together with the tax levy

referred to above, shall be sufficient to pay the principal of and interest on said bonds and to operate said airport facilities. In the event of any changes of method of assessment of property for taxation, the Authority will certify up to what one (1) mill tax would raise as of the date of this ordinance. Said bonds do not constitute an indebtedness of the City of Red Cloud, Nebraska, within the meaning of any constitutional or statutory limitation, but shall constitute general obligations of the Airport Authority of the City of Red Cloud, Nebraska. * * * The Airport Authority of the City of Red Cloud, Nebraska hereby pledges and hypothecates the revenues and earnings derived and to be derived from any source whatsoever, including any additions and improvements constructed thereto, for the payment of said bonds, both principal and interest. * * * The pledge hereunder of revenues and earnings derived and to be derived from the operation of said airport facilities and all extensions and improvements thereof for the payment of principal and interest on the bonds issued hereunder shall be on the gross revenues of said Authority and shall be prior and superior to amounts required for operation and maintenance of said facilities."

In the form of bond provided in the resolution, the following appears: "This bond is payable solely from a tax levied to the extend (sic) provided by law and the Authority covenants that such tax, together with other fees, rentals and revenues or moneys shall be sufficient to pay the principal of and interest on this bond and the series of which it is a part, and is issued under authority of the provisions of Article 5, Chapter 3, Reissue Revised Statutes of Nebraska, 1943, and all laws amendatory thereof and supplementary thereto, for the purpose of paying the cost of acquiring land and constructing thereon a landing strip and doing other work necessary and incidental thereto, and this bond does not constitute an indebtedness of said City of Red Cloud, Nebraska, within

any constitutional or statutory limitation. * * * Under said laws and the resolution authorizing this issue of bonds, the monies received from a tax levied to the extent provided by law together with all other fees, rentals and revenues shall be deposited in a separate fund designated as the 'Airport Authority of the City of Red Cloud Revenue Fund' of said Airport Authority, which shall be used only for paying the principal of and interest on all bonds of said Authority that are issued under authority of said laws and all amendments thereto are payable by their terms only from said tax, fees, rentals and revenues of said Airport Authority, and for providing for reserves therefor. * * * The Airport Authority of the City of Red Cloud, Nebraska covenants to certify annually to the Governing Body of the City of Red Cloud, Nebraska, as long as any of the bonds of this issue remain outstanding, a tax to the maximum extent provided by law. In the event of any changes of method of assessment of property for taxation, the Authority will certify up to what one (1) mill would raise as of the date of this ordinance, and to maintain rates and charges sufficient in amount, which together with the tax, will be sufficient to pay the principal of and interest on this bond as the same becomes due."

It is urged by the plaintiff that the foregoing provisions of the resolution and bonds are violative of section 3-509, R. R. S. 1943, which provides: "The bonds, notes, and other obligations of an authority shall not be a debt of the State of Nebraska or of the city in which such authority is established, and neither the state nor the city shall be liable thereon, nor shall such bonds be payable out of any funds other than funds of the authority issuing same."

It is shown by the record that the pledge of revenue, income, receipts, profits, or other money of the authority, as provided by section 3-507, R. S. Supp., 1965, without the inclusion of the proceeds of the one mill tax provided for in section 3-504, subsection (12), R. R. S.

1943, is insufficient to fund the bonds, and without the inclusion of the tax the sale of the bonds to First Nebraska Securities Corporation cannot be made. The amount to be certified to the city to be levied on the tangible property of the city is for the purpose of carrying on the airport facility. It is not levied for the primary purpose of providing for the funding of bonds. The money derived from this tax is a part of the money provided for the construction, operation, and maintenance of the airport facility. It is a part of the funds of the authority and is not at any time funds of the city although the city performs the ministerial duty of levying, collecting, and paying the tax to the authority. The tax can be levied whether or not the bonds are issued. The tax is in effect that of the authority, a separate entity, a public corporation, and an agency of the city. It is in no sense of the term a city tax, and when the city performs its ministerial functions with reference to its levy, collection, and payment over, the city's responsibility ceases, and no obligation remains. The bonds are general obligations of the authority and not the city. The provision of section 3-509, R. R. S. 1943, that the bonds of the authority shall not be a debt of the city has not been violated for the reason that the city is under no obligation to pay the bonds.

We find no merit in the contention that the authority cannot pledge the funds received from the one mill levy until the bonds are paid. It is customary for bonds of municipalities to be funded by the levy of taxes over a period of years. It would seem that the funds derived from future levies could be pledged the same as future rentals or other income. We think it was the intention of the Legislature to include such a tax as that authorized by section 3-504, subsection (12), R. R. S. 1943, when it provided by section 3-507, R. S. Supp., 1965, that such bonds be general obligations of the authority payable out of any "revenue, income, receipts, profits, and other money derived by the authority."

It is also asserted that section 3-504, subsection (12), R. R. S. 1943, is violative of Article XIII, section 2, of the Constitution of Nebraska, in that it amounts to a donation by the city for a work of internal improvement without having been submitted at an election to the qualified electors of the city. The answer to this contention is that the city has not made a donation to the authority, or, for that matter, made any payment to the authority at all. The tax for all practical purposes was made by the authority upon the tangible property of the city. The city has no interest in the tax other than to perform its ministerial duties with reference thereto.

It is contended that Chapter 3, article 5, R. R. S. 1943, is unconstitutional in that it amends Chapter 18, article 15, R. R. S. 1943, without specifying the amended sections, and without repealing the sections amended contrary to Article III, section 14, Constitution of Nebraska. Chapter 3, article 5, R. R. S. 1943, deals with the power of cities to acquire aviation fields. Chapter 18, article 15, R. R. S. 1943, deals with airport authorities. The subjects are different. Chapter 3, article 5, R. R. S. 1943, is an independent act dealing with a different subject than Chapter 18, article 15, R. R. S. 1943, and the provisions of Article III, section 14, of the Constitution of Nebraska, are not applicable.

We have examined the assignments of error not discussed herein and find no merit in them. The bonds in question were issued in accordance with the controlling law as the trial court found. Our views being in accord with those of the trial court, we conclude that that court properly denied an injunction and dismissed the action.

AFFIRMED.