NEAL C. WILLMS, APPELLEE, v. NEBRASKA CITY AIRPORT AUTHORITY, APPELLANT.

228 N. W. 2d 276

Filed April 24, 1975. No. 39719.

Richard R. Hoch of Hoch & Steinheider, for appellant.

Daniel J. Duffy of Cassem, Tierney, Adams & Henatsch, for appellee.

Heard before SPENCER, BOSLAUGH, and BRODKEY, JJ., and HASTINGS and CLARK, District Judges.

BRODKEY, J.

This case involves an interpretation of the Nebraska Budget Act, being sections 23-921 to 23-933, R. R. S. 1943. The plaintiff, Neal C. Willms, filed this action against the defendant, Nebraska City Airport Authority, under the provisions of section 23-930, R. R. S. 1943, praying that the fiscal 1973 budget of the defendant be set aside as having been adopted in violation of the Nebraska Budget Act. The case was tried to the court, which on May 20, 1974, entered judgment in favor of the plaintiff. The court declared the defendant's budget to be "void and without effect"; declared the levy made under the budget to be "void"; and ordered "all monies now received, or that may hereafter be received by either the City Treasurer of Nebraska City, Nebraska, or the County Treasurer of Otoe County, Nebraska, by reason of this levy made on behalf of the Defendant shall be by them distributed as provided by law and the order of this court * * *." The costs of the action were taxed to the defendant. At a subsequent hearing, the court awarded the plaintiff an attorney's fee for his attorney in the sum of $800, "the same to be charged as costs in this action to be paid by defendant." The defendant thereafter perfected its appeal to this court. As its principal assignments of error in this appeal, defendant alleges that the trial court erred in determining that

the defendant was subject to the provisions of the Nebraska Budget Act, and in determining that strict compliance by the defendant with the provisions of that act was required in view of the fact that a public hearing had been held by the Nebraska City council on its budget which included defendant's budget as provided by law. It also claims the court erred in awarding an attorney's fee for plaintiff's attorney and in taxing that award as costs to the defendant.

Before discussing the facts of the case, it will be helpful to note some of the pertinent provisions of applicable statutes. We first note the purpose of the Legislature in enacting the Nebraska Budget Act in 1969. This is clearly set out in section 23-921, R. S. Supp., 1972, as follows: "The purpose of this act is to *require governing bodies* of this state to which this act applies to *follow prescribed budget practices and procedures* and *make available* to the public *pertinent information* pertaining to the financial requirements and expectations of such governing bodies *so that intelligent* and informed *support, opposition, criticism, suggestions, or observations* can *be made by those affected;* \* \* \*." (Emphasis supplied.) Section 23-922, R. S. Supp., 1972, provides: "As used in this act, unless the context otherwise requires: (1) Governing body shall mean, in the case of a city, the council; \* \* \*; in the case of an airport authority, the airport authority board; \* \* \*." Section 23-923, R. S. Supp., 1972, provides: "Each governing body shall prepare in writing and file with its secretary or clerk, in the year of its organization and each year thereafter, not later than the first day of August of each year on forms prescribed and furnished by the auditor following consultation with representatives of such governing bodies or as otherwise authorized by state law, a proposed budget statement containing the following information, except as provided by state law: \* \* \*." The provisions for a hearing on the proposed budget, and the specific procedures to be followed, are set out in section

23-925, R. S. Supp., 1973, as follows: "Each governing body, after the filing of the proposed budget statement with its secretary or clerk, shall each year conduct a public hearing on such proposed budget statement. *No-tice of place and time of such hearing, together with a summary of proposed budget statement, shall be pub-lished at least five days prior to the date set for hear-ing, in a newspaper of general circulation within the governing body's jurisdiction* or by direct mailing of the notice to each resident within the community; Pro-vided, that when the total operating budget, not in-cluding reserves, does not exceed ten thousand dollars per year, the proposed budget summary may be posted at the governing body's principal headquarters. After such hearing, the proposed budget statement shall be adopted, or amended and adopted as amended, and a written record shall be kept of such hearing. The amount to be received from taxation shall be certified to the levying board after the proposed budget state-ment is adopted, or is amended and adopted as amended, and if the levying board shall represent more than one county, a member or representative of the governing board shall appear and present its budget at the hearing of each county in which is located a major area of the county affected by its budget. If the adopted budget statement reflects a change from that shown in the pub-lished proposed budget statement, a summary of such changes shall be published within twenty days after its adoption in the manner provided in this section, but without provision for hearing, setting forth the items changed and the reasons for such changes." (Emphasis supplied.) The procedures to be followed after the hear-ing on the budget are detailed in section 23-927, R. S. Supp., 1972, which reads as follows: "After publication and hearing thereon and within the time prescribed by law, each governing body, except as provided in section 79-2210, shall file with and certify to the levying board on or before August 15 and file with the auditor, a copy

of the adopted budget statement, together with the amount of the tax to be levied. Proof of publication shall be attached thereto. The governing body shall certify an amount of tax to be levied by the levying board, which levy shall not exceed the maximum levy prescribed by state law; Provided, the governing body, in certifying the amount to be so levied, may make allowance for delinquent taxes not exceeding five per cent of the amount to be levied, plus the actual percentage of delinquent taxes for the preceding tax year. Except for such allowance, a governing body shall not certify, nor a levying board levy, an amount of tax greater than the amount determined under section 23-924."

The statutory provisions authorizing a taxpayer to contest the validity of the budget statement adopted by the governing body are contained in section 23-930, R. R. S. 1943: "A taxpayer upon whom a tax will be imposed as a result of the action of a governing body in adopting a budget statement, as herein required, may contest the validity of the budget statement so adopted by the governing body by filing an action in the district court of the county in which the governing body is situated. Such action shall be based either upon a violation of or a failure to comply with the provisions and requirements of this act by the governing body. In response to such action the governing body shall be required to show cause why the budget statement should not be ordered set aside, modified or changed. The action herein authorized shall be tried to the court without a jury and the same shall be given priority by the district court over other pending civil litigation, and by the Supreme Court on appeal, to the extent possible and feasible to expedite a decision therein. Such action shall be filed within thirty days after the adopted budget statement is required to be filed by the governing body with the levying board. If the court finds that the governing body has violated or failed to comply with

the requirements of this act, the court shall, in whole or in part, set aside, modify, or change the adopted budget statement, tax levy, or mill rate, as the justice of the case may require.

"The remedy provided hereby shall not be exclusive but shall be in addition to any other remedy provided by law."

Two other statutes, not part of the Nebraska Budget Act, but contained in the City Airport Authorities Act, should be noted. Section 3-503(3), R. S. Supp., 1973, provides, among other things: "All obligations of such city for the payment of money to an authority incurred in carrying out the provisions of this act shall be included in and provided for by each annual budget of such city thereafter until fully discharged." Also, section 3-504, R. S. Supp., 1973, which sets out the powers of an airport authority, provides: "Any authority established under the provisions of this act shall have power: * * * (12) To certify annually to the governing body of the city the amount of tax to be levied for airport purposes, which the authority requires under its adopted budget statement to be received from taxation, *not to exceed one mill* on the dollar upon the assessed valuation of all the taxable property in such city, except intangible property, and the governing body shall levy and collect the taxes so certified at the same time and in the same manner as other city taxes are levied and collected, and the proceeds of such taxes when due and as collected shall be set aside and deposited in the special account or accounts in which other revenue of the authority is deposited; Provided, that an authority in a city of the first or second class shall have power *to certify annually* to the governing body of such a city *an additional amount* of tax to be levied for airport purposes, *not to exceed one mill,* to be levied, collected, set aside, and deposited, as above specified, and if negotiable bonds of the authority are thereafter issued, this power shall continue until such bonds are paid in full.

When such additional amount of tax is first certified, the governing body may then require but not thereafter, approval of the same by a majority vote of the governing body, or by a majority vote of the electors voting on the same at a general or special election. The provisions of this subdivision shall not apply to cities of the metropolitan class; * * *." (Emphasis supplied.) We also note the provisions of section 77-1736.04, R. S. Supp., 1973, providing for automatic refunds by a county of taxes which a court has adjudged and determined are illegal.

With the above statutes as a background, we now examine what transpired in this case. In the course of preparing the fiscal 1973-1974 budget for Nebraska City, the clerk-treasurer of that city, on May 23, 1973, notified the Nebraska City airport authority by letter that the council would appreciate receiving the budget requests of the authority as soon as possible so that they might be included in the general all-purpose levy of the city. Under the Nebraska statutes, above-quoted, the airport authority has the power to levy a one-mill tax on the property within Nebraska City without the vote of the people or the city council but the actual levy is made by the city council after receipt of the certification of the budget from the authority. Following receipt of the letter from the city clerk, the airport authority, on June 5, 1973, posted a notice in three public places that a meeting of the Nebraska City airport authority would be held at 9 p.m., Thursday, June 7, at the fire & rescue building, which meeting would be open to the public. At no time prior to that meeting, held on June 7, 1973, did the authority publish notice in a newspaper of general circulation that there would be a budget hearing held on that date, or showing the amounts of the proposed budget, as required by law. The Nebraska City airport authority adopted its proposed budget on that date, and thereafter certified its budget requirements to the city. That budget did not

include requests for planning funds, but the city clerk added a request for such funds to the budget after oral consultation with the secretary of the airport authority. The city clerk then consolidated the budget submitted by the authority with the budgets from other city boards into the general city budget; and on July 16, 1973, a public budget hearing was held on the consolidated budget, including the requests of the airport authority, before the Nebraska City council, after due publication of notice of such hearing. No members of the airport authority attended that hearing, although two citizens did appear to speak in opposition to the airport authority's request. The Nebraska City council then adopted its budget, which included the exact amounts requested by the airport authority. Following the public hearing, the city clerk-treasurer notified the airport authority that its budget had been adopted by the council at its July 16, 1973, budget meeting. The city's levy included .9 mills on behalf of the airport authority which according to computations would produce tax revenue totalling $13,520. It is to be noted that in making such levy on behalf of the airport authority, the city acted ministerially, as by statute the authority had the power to levy a one-mill tax without the vote of the people or the city council although the city council would have had to give its approval to levy an additional one-mill tax for airport authority purposes.

On September 14, 1973, the plaintiff filed his petition under section 23-930, R. R. S. 1943, of the Nebraska Budget Act, to set aside the airport authority's budget. It should be noted in passing that under that section the burden of proof is placed upon the governing body to show cause why the budget statement should not be ordered set aside, modified, or changed. Upon trial, as previously stated, the trial judge sustained plaintiff's contentions and set aside the budget statement. Defendant has appealed from that judgment.

The record in this case clearly shows that the airport

authority failed to comply with the clear and specific requirements of the Nebraska Budget Act in many respects. In fact, the secretary of the airport authority testified he had never examined the Nebraska Budget Act, nor any law in connection with the certification or budget procedures for an airport authority. The Nebraska Budget Act requires, among other things, that the authority prepare and file with its secretary a proposed budget statement detailing the estimated receipts and expenditures for the ensuing fiscal year. It did not do so. The statute also requires that the airport authority hold a public meeting, where the budget in question exceeds $10,000, at least 5 days after the publication of the details of such proposed budget in a newspaper of general circulation. The airport authority at one of its regular meetings, held on June 7, 1973, considered its budget requirements, made up a proposed budget which it adopted, and certified the budget at the same meeting. The notice of that meeting was posted, not published, 2 days before the meeting, and the notice made no mention of the purpose of the meeting or the details of the proposed budget statement. The proposed budget statement was prepared, adopted, and certified to the city without notice to the public or a public hearing, notwithstanding the Nebraska Budget Act specifically defines the airport authority board as being a "governing body" in the case of an airport. Defendant, however, argues that it "substantially complied" with the requirements of the Nebraska Budget Act, and that the Nebraska law does not require an airport authority to hold a separate public hearing when the city holds the required hearing on its budget and includes the airport authority budget as part of the city's consolidated budget.

The question, therefore, is whether the requirements and procedures contained in the Nebraska Budget Act are mandatory and jurisdictional, or whether substantial compliance will suffice. The trial court held those re-

quirements were jurisdictional. We agree. We are supported in our conclusion by the clear language of section 23-921, R. S. Supp., 1972, of the Nebraska Budget Act, previously referred to, which sets out the purpose of the act: "The purpose of this act is to *require* governing bodies of this state to which this act applies to follow *prescribed* budget practices and procedures and make available to the public pertinent information pertaining to the financial requirements and expectations of such governing bodies so that intelligent and informed support, opposition, criticism, suggestions, or observations can be made by those affected; * * *." (Emphasis supplied.) The act specifically requires "governing bodies," in this case the airport authority board, to hold such a public hearing after legal notice in the manner provided and after notice of the details of the proposed budget has been given, so that intelligent and informed discussion of the budget by those affected can be made. This was not done. The fact that the public was permitted to attend the meeting of the city council at which its budget was adopted would not, in our opinion, satisfy this requirement. It is to be noted that the Nebraska City council had no discretion whatsoever with respect to the airport authority's budget submitted to it in this case. This is made clear in Obitz v. Airport Authority of the City of Red Cloud, 181 Neb. 410, 149 N. W. 2d 105 (1967), where in discussing the statutory status of an airport authority, the court emphasized that city's ministerial duties with respect to the collection of any tax of one mill or less certified to it by an airport authority, and stated as follows: "The Airport Authority is a public corporation and an agency of the city. Its creation is for a public purpose. * * * The authority uses its income from rentals, charges, and sales to maintain and operate its airport. In addition thereto, it is authorized to certify to the city an amount not exceeding one mill on the dollar of the assessed valuation of the property in the city, except intangible property, to aid in the cost of

operating the airport. The city makes the levy, collects the tax, and pays it to the authority as part of its ministerial duties required by law. * * * The amount to be certified to the city to be levied on the tangible property of the city is for the purpose of carrying on the airport facility. * * * It is a part of the funds of the authority and not at any time funds of the city although the city performs the ministerial duty of levying, collecting, and paying the tax to the authority. * * * The tax is in effect that of the authority, a separate entity, a public corporation, and an agency of the city. It is in no sense of the term a city tax, and when the city performs its ministerial functions with reference to its levy, collection, and payment over, the city's responsibility ceases and no obligation remains. * * * The tax for all practical purposes was made by the authority upon the tangible property of the city. The city has no interest in the tax other than to perform its ministerial duties with reference thereto."

The main purpose of the Nebraska Budget Act in requiring a public budget hearing is to guarantee the right to attempt to persuade a taxing body not to levy a tax for an unwanted project. The appearance of citizens before a meeting of the Nebraska City council would not accomplish that purpose, and the airport authority board should not have bypassed the clear requirements of the statute in that regard. The spirit and purpose of the Nebraska Budget Act was not carried out.

The District Court awarded plaintiff the sum of $800 as a fee for his attorney, and in its judgment entry taxed the amount of such award as costs against the defendant. Defendant objects to the award, claiming that there is no statutory authority or uniform practice for such allowance. Strawn v. County of Sarpy, 156 Neb. 797, 58 N. W. 2d 168 (1953); Warren v. Warren, 181 Neb. 436, 149 N. W. 2d 44 (1967). This is undoubtedly true. However, plaintiff seeks to justify the award of attorney's fees on the theory that the services of his attorney

resulted in rescuing or preserving a fund not only for plaintiff's benefit, but also for the benefit of all others in the same class. See, Summerville v. North Platte Valley Weather Control Dist., 171 Neb. 695, 107 N. W. 2d 425 (1961); Gamboni v. County of Otoe, 159 Neb. 417, 67 N. W. 2d 489 (1954). There is evidence that the fund in this case consists of taxes collected by the county treasurer and apparently is still in his hands. Had this action been brought by a taxpayer or taxpayers as a class action for and on behalf of the members of the class to recover a refund of taxes levied without authority of law, as was done in Gamboni v. County of Otoe, *supra,* and if the county been made a party defendant to this action, as was true in the Gamboni and Summerville cases, there is little question but that an award of attorney's fees would have been proper. However, even in that event, the attorney's fees could not have been charged as costs in the action, but would have to be a charge on the fund so created. Allen v. City of Omaha, 136 Neb. 620, 286 N. W. 916 (1939); Summerville v. North Platte Valley Weather Control Dist., *supra.* In this case, however, plaintiff did not bring the action as a class action, but as an individual under section 23-930, R. R. S. 1943, of the Nebraska Budget Act. That statute has no provisions for the payment of attorney's fees to a successful taxpayer. We also point out that in 1972, Gamboni was disapproved insofar as it had approved a class action for a refund of taxes. See Hansen v. County of Lincoln, 188 Neb. 798, 197 N. W. 2d 651 (1972). Subsequent to Gamboni, it was held in State ex rel. Sampson v. Kenny, 185 Neb. 230, 175 N. W. 2d 5 (1970), that a suit cannot be maintained by one taxpayer on behalf of himself and others similarily situated to recover back taxes alleged to have been illegally assessed, but each taxpayer must bring action on his own behalf. We also note that section 77-1736.04, R. S. Supp., 1973, effective September 2, 1973, now provides for an

automatic refund to a taxpayer of taxes which by judgment or final order of any court of competent jurisdiction have been adjudged or determined to be illegal. It is not even necessary that the taxpayer file a claim therefore.

However, even if this were a class action which resulted in the creation of a fund for the benefit of a class of persons, under the facts of this particular case it would not be legally possible to award plaintiff an attorney's fee. The fund out of which the award of attorney's fees would have to be paid is in the hands of the county treasurer of Otoe County, Nebraska, who was not made a party to this action. Nor has the fund, itself, consisting of taxes collected under the levy in question, ever been within the jurisdiction of the court. Obviously, therefore, the court would have no jurisdiction to charge that fund with the payment of attorney's fees, or to order the county treasurer of Otoe County to do so. This distinguishes the case from Summerville and Gamboni, even if otherwise applicable, where each county treasurer himself was a party defendant in the respective lawsuits. For all these reasons, we conclude that the District Court was without authority to award plaintiff an attorney's fee in this case, or to charge an award of attorney's fees as costs against the defendant. Furthermore, even if an award of attorney's fees were permitted because of the creation of a fund, in this case the court would be without jurisdiction to make such award a charge against the fund of collected taxes in the hands of the county treasurer who was not a party to the action.

We modify the judgment of the District Court and deny the award of attorney's fees to plaintiff. Our decision on this issue is not to be construed as in any manner abrogating or affecting any private contract, arrangement, or understanding between the plaintiff and his attorney with regard to the payment of attorney's fees.

In all other respects, the judgment of the District Court is affirmed.

AFFIRMED AS MODIFIED.