REQUESTED BY: Brian C. Silverman, Scotts Bluff County Attorney
Are purchases for the construction, operation, and maintenance of a county airport, acquired and operated pursuant to Neb.Rev.Stat. §§ 3-601 to 3-609 (Reissue 1977), as amended, exempt from liability for sales and use tax pursuant to Neb.Rev.Stat. § 77-2704(1)(m) (Supp. 1980)?
No.
You inform us that Scotts Bluff County operates a county airport, but does not have an airport authority. Obviously, its authority to do so is derived from §§ 3-601 to3-609. Such an airport is under the direct control of the county board. See § 3-608.
Section 77-2704(1)(m) exempts from the sales and use tax `purchases by the state, including educational institutions recognized or established under the provisions of Chapter 85, or by any county, township, city, village, or rural or suburban fire protection district, for use in a governmental capacity, or by any irrigation or reclamation district or the irrigation division of any public power and irrigation district.'
The wording of this subsection seems to create three classes: (1) the state, including the described educational institutions; (2) counties, townships, cities, villages, and fire protection districts; and (3) irrigation or reclamation districts and irrigation divisions of public power and irrigation districts. Classes 1 and 3 are given an absolute exemption, but class 2 is given the exemption only when the purchase is for use in a governmental capacity. In an opinion of this office dated October 13, 1977, Report of the Attorney General 1977-78, page 206, we discussed a prior version of this section, which was less clear than the present version in creating classes, and concluded that the language about use in a governmental capacity applied to counties, townships, villages, and fire protection districts, but not to the state.
We therefore believe that the statute gives the exemption to the county only if the purchase by the county is for use in a governmental capacity. The question, then, is whether the operation of an airport by a county pursuant to §§ 3-601 to 3-609 is in a governmental capacity. While the question is not without doubt, we conclude that the county is operating in a proprietary capacity in such operation.
In Obitz v. Airport Authority of the City of RedCloud, 181 Neb. 410, 149 N.W.2d 105 (1967) the court held that an airport authority was a proprietary activity and not a governmental one, even though it was a public corporation engaged in a public purpose.
We realize that your airport is not operated by an airport authority, but by the county itself. We think it makes no difference. In Obitz the court cited Brasier v.Cribbett, 166 Neb. 145, 88 N.W.2d 235 (1958). In that case the city was operating the airport directly, rather than through an airport authority, just as Scotts Bluff County is now doing. The court held the city was performing a proprietary function in doing so, saying:
 A municipal corporation is sometimes authorized to own and conduct a business or commercial enterprise and when it engages therein it is said to be acting in its private or proprietary capacity. It has no duty to conduct such an undertaking and when it does it is entirely voluntary on its part and it thereby enters into a third relation distinct from the dual relations above noted. While occupying this third relation it is engaged in conducting a business and is subject to the law and procedure applicable to a private corporation or person conducting a like business. It has in that regard no governmental functions or corporate duties and has no more privileges or exemptions than a private corporation.
These cases would be completely decisive of the question, were it not for a number of cases which seem to say that a county always acts in a governmental capacity. The first of these seems to be State ex rel. City of Omaha v.Board of County Commissioners, 109 Neb. 35, 189 N.W. 639
(1922), in which the court said that a county does not possess the double governmental and private character that cities do, but was governmental only. The court cited no authority for that proposition, and the language was, we believe, purely dictum. Nevertheless, the proposition has been repeated in subsequent cases. See, e.g., State ex rel.Meyer v. County of Banner, 196 Neb. 565, 244 N.W.2d 179
(1976) (Boslaugh, concurring), and Seward County Board ofCommissioners v. City of Seward, 196 Neb. 266,242 N.W.2d 849 (1976).
In the latter case, however, we find this discussion:
 The distinction between governmental and proprietary functions has in the past been useful in restraining the ancient concept of municipal tort immunity, not because of any logic in the distinction, but rather because sound policy dictated that governmental immunity should not envelop the many activities which the government pursues to meet the needs of the citizens. State of Missouri ex rel. Askew v. Kopp, supra. We agree with a number of commentators that although the distinction may be useful as a device for limiting the effect of governmental immunity from tort liability, it is not appropriate for the resolution of zoning conflicts.
We are here confronted with an activity which, when performed by a city, has been specifically held to be proprietary. When the same activity is performed by a county, we have difficulty in saying that it is governmental, particularly when the original basis for drawing a distinction between the two functions has been undermined by the passage of the political subdivisions tort claims act Neb.Rev.Stat. §§ 23-2401 to 23-2420 (Reissue 1977).
We have examined the constitutional provisions dealing with counties, found in Article 9 of the Nebraska Constitution. We find nothing whatever in those provisions which would prohibit the Legislature from authorizing counties to perform nongovernmental functions. We wonder whether the language found in State ex rel. City of Omaha v. Board ofCounty Commissioners, supra, may have been prompted by the historical fact that counties had not, at that time, been authorized to perform many of the proprietary functions regularly performed by cities, such as furnishing electricity to their inhabitants.
When we are faced with the fact that in the very section we are construing the Legislature pretty clearly contemplated that a county could purchase goods for use in a nongovernmental capacity, it is difficult for us to say that a county could not do so, in spite of the language we have found in some of the cases. The Legislature has substantially complete control over its political subdivisions, and if it chooses to assign proprietary functions to them, we know of no constitutional reason why it cannot do so.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General APPROVED:Paul L. Douglas
Attorney General