## GEORGE J. SHEPARD V. JAMES M. EASTERLING ET AL.

### FILED JUNE 5, 1901.  No. 9,834.

1. **Claim Against County:** JURISDICTION OF DISTRICT COURT DERIVATIVE. The jurisdiction of the district court to hear and determine actions for the enforcement of claims against counties arising *ex contractu* and embraced within the provisions of section 37, chapter 18, article 1, Compiled Statutes, 1899, is derivative and not original.

2. **Jurisdiction of Board:** RECORD. A claim against a county must be presented, in writing, to the county board before that body has jurisdiction or authority to act upon it.

3. ———: SUBJECT MATTER. The only claim which the county board is, by section 37, chapter 18, article 1, Compiled Statutes, 1899, authorized to examine, adjust and allow, or reject, is one which must be paid by the issuance of a warrant upon the county treasurer.

4. **Right of Taxpayer.** The right of a taxpayer to test the validity of a claim against the county does not arise until there has been an adjudication by the county board in favor of the claimant.

5. **Report of County Officer:** APPROVAL BY COUNTY BOARD IS NOT A JUDICIAL ORDER AND IS NOT APPEALABLE. The approval by the county board of the report of a county officer made in compliance with the requirements of section 43, chapter 28, Compiled Statutes, 1899, is not a judicial order; it has not the force or conclusiveness of a judgment and is not appealable.

6. **Injunction by Taxpayer.** A taxpayer may maintain a suit to restrain the governing body of a municipal or public corporation from making an illegal disposition of public funds or property.

7. **Taxpayer Plaintiff in Equitable Action, Corporation Defendant.** A taxpayer may, also, commence and prosecute to judgment an equitable action to enforce, for the benefit of a municipal or public corporation, a right of action which its governing body has refused to enforce. In such case the corporation should be made a party defendant.

8. **County Board May Pay Judge for Extra-Official Service.** A county board may lawfully contract with a county judge to perform extra-official services in connection with the records of his office; and where such services have been performed without any valid contract, the county may accept the product of the judge's labor and pay him therefor. In such case, a taxpayer can not maintain an equitable action against the county judge on the

theory that the money received by him for such services belongs in equity and good conscience to the county and should be paid over to the county treasurer.

ERROR from the district court for Buffalo county. Heard below before GREENE, J. *Affirmed.*

*Frank E. Beeman,* for plaintiff in error.

*Willis D. Oldham* and *Hector M. Sinclair, contra.*

*James M. Easterling,* for himself.

SULLIVAN, J.

The defendant in error, James M. Easterling, as county judge of Buffalo county, collected certain fees earned by his predecessor, Thomas H. Cornett. These fees, it is contended, belong to the county and should be turned over to the county treasurer. It appears that the defendant performed extra-official services for the county in 1894, and that the county board afterwards adopted a report of its finance committee recommending that he be permitted to retain the Cornett fees as compensation for such services. The recommendation of the committee is as follows: "We would further report that we find the office of county judge in good condition and that said judge has devoted much labor to docketing and 'jacketing' some 600 cases that have not been docketed or 'jacketed' and filed away, and that at a considerable expense and labor that he has completed a large two-volume index of the probate records of this county—an indispensable piece of work for the convenience of the public, and the proper administration of the office. We would further suggest that this index covers the records of the county court from the organization of the county down to the present time and that if not made now at some future day the county would be compelled to make said index at great expense. We would therefore recommend that the fees aforesaid, viz: $269.59 (same being the fees earned by

Thomas H. Cornett as above set forth) be allowed and appropriated for the payment to Mr. Easterling for making said index and doing other necessary work in the office which is but a small remuneration for said work." From the action of the board adopting the report and approving the recommendation the plaintiff, George J. Shepard, undertook to prosecute an appeal. In the district court he filed a petition setting out the action of the county board, and alleging that such action "was a quarterly settlement between the said board and the said county judge, for the quarter ending June 30, 1895." An answer and reply were subsequently filed, and the issues thus raised were tried to the court and found in favor of the defendant. Judgment was rendered dismissing the case. In view of the conclusion which we have reached, it will not be necessary to consider all the questions discussed by counsel.

Obviously at the threshold of the case is the question of the authority of the court to grant the plaintiff any relief whatever. The plaintiff's theory seems to be that the action of the county board was, in substance, the allowance of a claim in favor of Easterling for the services mentioned in the committee's report. Assuming this to be a correct view, we proceed to inquire whether the district court obtained jurisdiction of the case by the appeal. If it did not, it was without power or authority to determine the validity of the defendant's claim for services, or to render a judgment affecting in any way the rights of the county. The jurisdiction of the district court in such matters is derivative, and not original. *Brown v. Otoe County*, 6 Nebr., 111; *Dixon County v. Barnes*, 13 Nebr., 294; *Brondberg v. Babbott*, 14 Nebr., 517; *Union P. R. Co. v. Ogilvy*, 18 Nebr., 638; *Moise v. Powell*, 40 Nebr., 671; *Keeshan v. State*, 46 Nebr., 155; *Stenberg v. State*, 48 Nebr., 299. Sections 33, 37 and 38, chapter 18, article 1, Compiled Statutes, 1899, are as follows:

"Sec. 33. Upon the allowance of any claim or account against the county, the county board shall direct the

county clerk to draw a warrant upon the county treasurer in payment thereof, such warrant to be signed by the chairman of the county board, countersigned by the county clerk, and sealed with the county seal, but the same shall not be delivered to the party until the time for taking an appeal has expired, and if such appeal be taken then not until the same shall have been determined."

"Sec. 37. Before any claim against a county is audited and allowed, the claimant or his agent shall verify the same by his affidavit, stating that the several items therein mentioned are just. and true, and the services charged therein, or articles furnished, as the case may be, were rendered or furnished as therein charged, and that the amount claimed is due and unpaid after allowing just credits. All claims against a county must be filed with the county clerk. And when the claim of any person against a county is disallowed, in whole or in part, by the county board, such person may appeal from the decision of the board to the district court of the same county, by causing a written notice to be served on the county clerk, within twenty days after making such decision, and executing a bond to such county, with sufficient security, to be approved by the county clerk, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant. Upon the disallowance of any claim, it shall be the duty of the county clerk to notify the claimant, his agent or attorney, in writing, of the fact, within five days after such disallowance. Notice mailed within said time shall be deemed sufficient.

"Sec. 38. Any taxpayer may likewise appeal from the allowance of any claim against the county by serving a like notice within ten days and giving a bond similar to that provided for in the preceding section."

Considering together these provisions of the law relative to the allowance of claims against counties, it seems clear that a claim must be presented to the county board

in writing before that body has jurisdiction or authority
to act upon it—before an order of allowance or disallow-
ance can be made. It also seems that the only claim
which the board is by the statute authorized to examine,
adjust and allow, or reject, is one which must be paid by
the issuance of a warrant upon the county treasurer.
The object of the legislature in giving a taxpayer the
right of appeal was to enable him to safeguard the inter-
ests of the public and his own by preventing money in the
treasury from being paid out upon illegal claims. If this
is a correct interpretation of the statute, the conclusion
follows that the action of the county board in adopting
the report of the finance committee was not an appeal-
able order; it did not have the force or conclusiveness of
a judgment. The board acted ministerially; it did not
assume to act otherwise; it did not undertake to make
a judicial order. Easterling did not invoke judicial ac-
tion on any claim against the county, and consequently
the board was without authority to bind him by an ad-
judication, either favorable or adverse. The action of the
board, as stated in the petition and admitted by the an-
swer, was a quarterly settlement between Easterling and
the supervisors. In making these settlements, it is well
understood, the county board performs ministerial func-
tions only. *Heald v. Polk County*, 46 Nebr., 28; *Hazelet v.
Holt County*, 51 Nebr., 716. As was said by the chief jus-
tice in a recent case (*Sheibley v. Dixon County*, 61 Nebr.,
409), the action of the board "was not in any sense an ad-
judication," and may not be alleged as an estoppel by
either the county or the officer. It results from these
considerations that the appeal was a nullity, and con-
ferred no jurisdiction upon the district court. The county
made no appearance in the case, and the court was, there-
fore, without power or jurisdiction to give a binding de-
cision either in its favor or against it. The only parties
to the suit were Shepard and Easterling, and if the pur-
pose of the litigation was to determine the latter's right
to compensation for services, it was prematurely com-

menced. The right of a taxpayer to test the validity of a claim against the county does not arise until there has been an adjudication by the county board in favor of the claimant.

It is not contended that the controversy may be regarded as an original action to charge the defendant as a trustee of the Cornett fees, and to compel him to pay the same to the county treasurer for the use of the county; but if it be so regarded, the plaintiff has not made a case entitling him to relief. There is, it is believed, no serious question about the right of a taxpayer to maintain a suit to restrain the governing body of a municipal or public corporation from making an illegal disposition of public funds or property. *Tukey v. City of Omaha*, 54 Nebr., 370. And on principle it would seem that a taxpayer should be permitted to enforce for the benefit of such corporation a right of action which its governing body has refused to enforce. If a taxpayer, to avoid the burdens of needless taxation, may sue to prevent public officers from squandering public money, there is, it seems to us, no good reason why he may not also commence and prosecute to judgment an equitable action for the enforcement of a corporate claim which the officers of the corporation have refused to enforce. *In re Cole's Estate*, 102 Wis., 1, 78 N. W. Rep., 402; *Quaw v. Paff*, 98 Wis., 586; *Frederick v. Douglas County*, 96 Wis., 411. It is not shown in this case that there was any demand upon the county board to bring suit for the county; but it may be conceded that, under the circumstances, no demand was necessary. It may also be conceded that Easterling had no valid contract for the performance of the services mentioned in the report of the finance committee. How then does the case stand? The services were undoubtedly extra-official; they were outside of and beyond the duties which the law imposed upon the defendant as judge of the county court; he could not have been compelled to perform them; they might have been performed by any one employed for the purpose. The county got the benefit of Easterling's labor,

and it is plain, according to equity and good conscience, that it should render an equivalent therefor. The county might have contracted with Easterling in advance for the services which he rendered, but because it did not make a formal and valid contract, is no legal reason why it might not afterwards accept the work and pay for it. *Burroughs v. Norton County*, 29 Kan., 196; *McBride v. City of Grand Rapids*, 47 Mich., 236; *Evans v. City of Trenton*, 24 N. J. Law, 764. The method by which the county board undertook to compensate the defendant for his services was, of course, irregular, but it worked no real injury to the plaintiff or any other taxpayer of the county. It is not claimed that the amount allowed the defendant was excessive, or that a less amount would have been allowed if the usual procedure had been followed.

The plaintiff is not entitled to any relief, either in law or in equity, and hence the trial court did not err in dismissing the action. The judgment is

AFFIRMED.

NORVAL, C. J.

I concur in the judgment just rendered.