SCHOOL DISTRICT NUMBER 30, APPELLANT, V. CUMING COUNTY, APPELLEE.

FILED MAY 7, 1908. No. 15,115.

1. **School Districts: UNAUTHORIZED TAXES: VOLUNTARY PAYMENTS: DISTRIBUTION.** Pursuant to the provisions of unconstitutional acts of the legislature, the county board of Cuming county levied taxes ostensibly for the benefit of the high school districts of that county, and the taxpayers voluntarily paid the same. *Held,* That such taxes constitute a public fund which may be distributed to the high school districts and other school districts of the county under the provisions of subsequent legislation.

2. ———: ———: ———: **VESTED RIGHTS.** A county has no vested right in a public fund created by the levy of taxes under the provisions of an unconstitutional act of the legislature for the benefit of high school districts and voluntarily paid by the taxpayers.

3. **Counties: CLAIMS: DISALLOWANCE: APPEAL.** When funds in the county treasury may be distributed only upon warrants authorized by the county board, a claim or demand therefor may be filed with the county board by the party entitled thereto, and an appeal may be prosecuted from an order rejecting the claim.

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Reversed.*

*A. R. Oleson,* for appellant.

*M. McLaughlin, contra.*

EPPERSON, C.

The legislature of 1895 passed house roll No. 283, appearing as chapter 60, laws 1895, attempting thereby to provide free attendance at public high schools by nonresidents of high school districts but residents of the county. This act contained a provision for the payment of the expenses of high school pupils who were nonresidents of the district but residents of the county by the creation of a county school fund acquired by one mill levy upon all the property in the county other than the

property in high school districts. This act of the legis-
lature was held unconstitutional in *Board of Education
v. Moses*, 51 Neb. 288. In 1899 the legislature passed
senate file No. 41, published as chapter 62, laws of 1899,
and thereby again attempted to provide free attendance
at public high schools of nonresident pupils. Section 4
of this act provided that the expenses therein contem-
plated shall be paid from the general fund in each county,
and the county board were permitted annually to in-
clude in their estimate not to exceed one mill on the
dollar to be levied and collected as other taxes. This act
of the legislature was declared unconstitutional in *High
School District v. Lancaster County*, 60 Neb. 147. Before
each of these acts was declared unconstitutional, taxes
had been levied and collected thereunder, and in some of
the counties the funds so collected were still on hand
when the acts were declared unconstitutional. The result
was that the counties were in possession of funds which
had been unlawfully collected. In 1905 the legislature
passed two acts which are identical, except that they have
different titles. These acts appear respectively as chapters
132, 133, laws 1905. Section 1 of each of these acts pro-
vides: "That all funds which have heretofore been paid
into the treasury of any county for the maintenance of
free high schools for nonresident pupils shall be paid to
the school districts of such county which have maintained
free high schools for nonresident pupils, proportionately
to the number of nonresident pupils instructed and the
length of time each pupil received such free instruction,
provided that such sum shall not exceed seventy-five cents
per week for each nonresident pupil so instructed." Other
sections of the acts provide for the distribution of the sur-
plus, and for the repeal of other sections, and need not
be further noted here. After the passage of the acts of
1905 the appellant herein filed its claim with the county
board of Cuming county, claiming its proportion of the
fund in the county treasury of that county created under
the provisions of the unconstitutional acts of 1895 and

1899. The county board rejected the claim, and the case was appealed to the district court, wherein the appellant filed its petition, alleging its existence as a high school district; and alleging that during the school year of 1899 and 1900 a number of pupils, naming them, nonresidents of the school district but residents of the county, attended its high school, "a total attendance by said persons of 552 weeks; * * * that said school district, having sufficient accommodations for said pupils, admitted them to said high school upon the faith of and in reliance upon said chapter 62 aforesaid, and allowed each of them the same privileges in said public high school as given to its resident pupils; that the cost and expense to said school district by reason of the attendance of such nonresident pupils aforesaid was in excess of 75 cents a week for each pupil during the whole time of their attendance, which expense was an additional burden upon said high school district in said amount each week," that the school board of said district reported such attendance to the county board, which caused to be levied a tax upon the property of said county for the purpose of paying for the tuition of such nonresident pupils under the provisions of chapter 60, laws 1895, and chapter 62, laws 1899; that there was realized from such levy the sum of $1,639.10, and out of which sum there has been paid for the purposes aforesaid for which it was levied the sum of $767.74, leaving a balance of $871.36; that such taxes were not paid under protest, nor had any taxpayer made application to have such taxes refunded; that the reasonable value of the accommodations furnished the pupils designated is the sum of 75 cents a pupil for each week in attendance; that by reason thereof the said school district is entitled to have paid out of such fund the sum of $414, none of which has been paid, and for which the appellant asks judgment against the appellee county. To appellant's petition appellee filed a demurrer for the following reasons: "(1) It does not state facts sufficient to constitute a cause of action. (2) The statutes upon which

this action is founded· are unconstitutional and void. (3) The county board has no jurisdiction over the subject matter of this claim, and no jurisdiction was conferred on the district court by appeal." This demurrer was sustained, a judgment of dismissal entered, and the case brought here for review.

It is conceded that the county board had no authority to make the levies. But, having created this fund under color of authority for the purpose of supporting nonresident pupils in the different high school districts of the county, the questions arise as to whom the fund belongs, and did the legislature have authority to provide for its distribution to the high school districts. The fund was created by voluntary payments made by the taxpayers; and, not having been paid under protest, and no action having been brought for its recovery, it is a public fund. It is beyond the recall of the taxpayers. Under no provision of our statute can it be refunded to the persons contributing thereto. It must be noted that the legislature intended by the passage of the acts of 1895 and 1899 to raise revenue in addition to the amount otherwise required, or authorized by the then existing revenue laws, and it was expressly provided in the act of 1895 that the fund thus raised should be known and designated, not as a part of the county's general fund, but as a county school fund, and such apparently was the purport of the act of 1899, although there it referred to the levy as a part of the general fund of the county, instead of a school fund. Each of the acts under which this fund was thus illegally created provided that it should be for the benefit of the high school districts of the county in proportion to the attendance of nonresident pupils. The county treasurer was the collector of the funds, but the county board was to a certain extent the custodian thereof, or, in ·other words, it was to be paid out to the several districts upon the order of the county board. Had the act been constitutional, the legislature might as well have made the

county treasurer the distributor of this fund. This pro-
vision only made the county board the trustee or agent
for the several high school districts. They made the levy.
They put in operation the revenue system of the state
for the purpose of realizing this fund. Although the acts
were unconstitutional, the fact remains that the fund was
created for the high school districts. The county has re-
ceived money for them, and, having done so, the county
board has no right to question the authority of the school
districts to receive it. The fund exists because the several
taxpayers, either through ignorance of their rights or
indifference thereto, have yielded the amount thus lev-
ied; and they yielded it for the purposes for which the
county board purported to levy it. They paid it to the
county treasurer who under the law is the collector of all
taxes within his county. It is a general rule that a tax
collector must account for and pay over to the several
municipalities for whom he collects all revenue entrusted
to him, and, further, that it makes no difference whether
the tax is legal or illegal. That is a matter in which he is
not concerned, and although a tax be levied under the
provisions of an unconstitutional act of the legislature,
he must account to the public therefor.

In Cooley, Taxation (2d ed.) p. 705, it is said: "If he
(the collector) receives the money to the use of the pub-
lic, he should account for it; and it is immaterial that
those who have paid it might successfully have resisted
the collection from them. * * * The principles here
stated are applicable not merely to the case of a defect
in the official authority, but to the case also in which
defects, either technical or substantial, might have been
urged to the tax the officer has enforced. The substantial
fact is that he has received money for the state, and, hav-
ing done so, it is not his privilege to pause and question
the right of the state to receive it; but he should pay it
over, and leave those from whom it was received to pre-
sent a claim to the state for the refunding, if they deny
its right to retain it. Even an unconstitutional tax, once

collected, the officer has no right to retain, but he should
account as in other cases." *O'Neal v. Board of School
Commissioners*, 27 Md. 227, was an action to recover
money due upon a levy for the benefit of school funds
placed in defendant's hands for collection as collector of
the county tax. Certain county charges had previously
been paid by the commissioners out of the school fund.
To reimburse the fund so expended $1,400 was levied by
the county commissioners for the use of the school fund
of the county. It was there held: "A tax collector who
admits the collection of taxes will not be permitted to
urge in his defense to a suit for their recovery that they
were unlawfully levied." To the same effect are the fol-
lowing: *Smith v. Titcomb*, 31 Me. 272; *Village of Olean
v. King*, 116 N. Y. 355; *Commonwealth v. City of Phila-
delphia*, 27 Pa. St. 497. In *Village of Olean v. King,*
*supra*, it was held: "While a tax collector may decline
to proceed in the collection of a tax illegally levied, as
any person may refuse to recognize any illegal authority,
or to obey an unconstitutional law, he may do so only for
his own protection. Having collected a tax, he cannot
then question the right of the proper authority to receive
it, but must pay it over." The cases above cited, it is true,
go to the liability of the tax collector to account for and
turn over to the public the funds collected under an il-
legal act of the legislature, but the same reasoning un-
doubtedly applies to the county board, whenever the
county, instead of a certain officer, is made the custodian
of the fund. Had the high school district, or a city, or vil-
lage made an illegal levy which was acquiesced in by the
the taxpayer, can there be any doubt but that the district
or municipality so making the levy could recover from the
tax collector? What greater rights has the county? It is
beyond the authority of the county board, after having
created this fund illegally, and after the taxpayers have
voluntarily contributed the same for the benefit of the
high school district, to say that they will not pay it for
the purpose for which it was intended. But it is urged

that, by permitting the appellant to recover herein, the legislature may indirectly accomplish what could not be done directly. We think that objection is not applicable to this case. While it is true that they would be turning over to the high school districts the fund in controversy, yet we must bear in mind that the illegal fund was created before the acts of 1905 were passed. The disposition of a public fund was the purpose of these acts, and they are applied to a public purpose.

Appellee contends that the county board had not original jurisdiction over claims of this character, and therefore the district court acquired no jurisdiction on appeal. It appears that the fund is in the custody of the county treasurer, held by him the same as county funds. In fact, the appellee contends that it is a county fund. There can be no doubt but that the only proper and legal process to remove it from the county treasury would be by warrant authorized by the county board. This being true, the county board had original jurisdiction to consider the appellant's claim. *Shepard v. Easterling*, 61 Neb. 882.

We recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

By the Court: For the reasons appearing in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.