ECONOMY PREFERRED INSURANCE COMPANY, APPELLANT, V.
CYNTHIA ANN MASS, PERSONAL REPRESENTATIVE OF THE ESTATE
OF DWIGHT E. EHLERT, DECEASED, AND MARK E. EHLERT,
APPELLEES.

497 N.W.2d 6

Filed March 12, 1993.   No. S-90-1076.

Mark J. Peterson, of Erickson & Sederstrom, P.C., for appellant.

Thomas J. Walsh, Jr., of Walsh, Fullenkamp & Doyle, for appellee Mark E. Ehlert.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This action for a declaratory judgment was brought by the plaintiff, Economy Preferred Insurance Company (Economy), against the defendants, Cynthia Ann Mass as personal representative of Dwight E. Ehlert, deceased and Mark E. Ehlert, to determine coverage under a homeowners insurance policy issued by the plaintiff to Dwight E. Ehlert and containing an exclusion for "bodily injury or property damage expected or intended by an insured."

The facts are not in dispute, and are stated in a stipulation submitted by the parties on motions for summary judgment.

Dwight Ehlert was the named insured under the homeowners insurance policy issued by Economy Preferred Insurance Company to him. The insurance policy insured the family home of Dwight Ehlert located at 8533 Templeton Drive in Omaha, Nebraska. Mark Ehlert, Dwight Ehlert's son, was included as an insured under the policy. On June 18, 1988, Mark Ehlert began arguing with his father, Dwight Ehlert at the family residence. Immediately thereafter, Mark Ehlert removed a rifle

from his bedroom and proceeded to shoot and kill his father, Dwight Ehlert. Mark Ehlert also shot and injured his father's friend, Stanley Rozell. The district court for Douglas County determined that Mark Ehlert was not competent to stand trial for the crimes of killing his father and the injury of Stanley Rozell and was not guilty by reason of insanity.

Subsequent to the shooting, Stanley Rozell sued Mark Ehlert for damages for the injuries he sustained in the incident. Mark Ehlert tendered the defense of that claim to Economy under the terms of the homeowners policy. Economy then brought this declaratory judgment action to determine its rights and obligations under the homeowners policy.

The policy excludes coverage for "intentional" acts by an insured which cause bodily injury. The policy provides, in relevant part: "1. Coverage E—Personal Liability. and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage: a. which. is expected, anticipated, foreseeable or intended by the insured; . . . ."

Economy contends that it has no liability under the policy because Mark Ehlert intentionally shot Stanley Rozell. The parties stipulated to the facts and submitted the matter to the district court upon cross-motions for summary judgment. The district court sustained Mark Ehlert's motion, and found that the policy issued by Economy provided coverage and that Economy was obligated to defend Ehlert in any and all lawsuits filed by Stanley Rozell arising out of the incident occurring at Ehlert's home. The trial court found that because Mark was legally insane at the time of the incident, his acts were not "intentional" so as to fall within the purview of the "intentional acts" exclusion of the policy. Therefore, Economy was required to provide liability coverage to Mark Ehlert for the claims alleged by Stanley Rozell. Economy also was ordered to pay Mark Ehlert's costs and attorneys fees. Economy appealed from that judgment.

Economy has assigned as error that the trial court erred in denying Economy's motion for summary judgment and in sustaining Mark Ehlert's motion for summary judgment. Economy also assigns as error the district court's award of attorneys fees to Mark Ehlert.

In the appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Metropolitan Life Ins. Co. v. Beaty, ante* p. 169, 493 N.W.2d 627 (1993).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and the moving party is entitled to judgment as a matter of law. *Id.*

An insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. When the terms of the contract are clear, they are to be accorded their plain and ordinary meaning. When a clause can be fairly interpreted in more than one way, there is an ambiguity to be resolved by the court as a matter of law. *Thorell v. Union Ins. Co., ante* p. 57, 492 N.W.2d 879 (1992). While an ambiguous policy will be construed in favor of the insured, an ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract. *Id.*

Under Nebraska law, the burden to prove that an exclusionary clause applies rests upon the insurer. *Jaramillo v. Mercury Ins. Co., ante* p. 223, 494 N.W.2d 335 (1993).

The issue on this appeal is whether insurance coverage is precluded as a matter of law by an exclusion for bodily injury coverage when the injury was "expected, anticipated, foreseeable or intended by the insured" and the insured is mentally ill or insane. Specifically, we must determine whether the fact that the insured, Mark Ehlert, was found to be insane and therefore not criminally liable for the injury to Stanley Rozell, is a sufficient ground to preclude application of the intentional act exclusion under the terms of the homeowners policy. This is a question of first impression for this court. However, this issue has been extensively litigated in other jurisdictions, and two conflicting lines of authority have emerged. One line of authority holds that if an insured is insane

or is suffering from a mental illness, the insured's act cannot be treated as "intentional" so as to exclude the resulting loss from coverage under an insurance policy containing an "intentional or expected" injury exclusion. See, *Ruvolo v. American Casualty Co.*, 39 N.J. 490, 189 A.2d 204 (1963); *Globe v. American Casualty Co. v. Lyons*, 131 Ariz. 337, 641 P.2d 251 (1981).

However, we believe the better reasoned view is that while an insane or mentally ill insured may be unable to form the criminal intent necessary to be guilty of a crime, such an individual can still intend or expect the results of injuries he or she causes. Several recent decisions in other jurisdictions support this view. See, *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 489 N.W.2d 431 (1992); *Public Employees Mut. Ins. v. James F.*, 65 Wash. App. 357, 828 P.2d 63 (1992); *Mallin v. Farmers Ins. Exchange*, 839 P.2d 105 (Nev. 1992); *Shelter Mut. Ins. v. Williams*, 248 Kan. 17, 804 P.2d 1374 (1991).

The decision of the Virginia Supreme Court in *Johnson v. Ins. Co. of North America*, 232 Va. 340, 350 S.E.2d 616 (1986), also supports this view. In *Johnson*, a mentally ill person shot and severely injured the plaintiff. The mentally ill person had specifically planned to kill the plaintiff, telling police that he simply wanted to shoot the plaintiff, so he did. The *Johnson* court stated:

> Here, when Davis aimed the pistol at Johnson, he knew that he was shooting a human being. Acting deliberately and methodically, Davis had searched for and found a pistol, loaded it, travelled to the victim's home, waited for him, begun talking with him, and shot him from close range. He acted with resolve and determination, not knowing that what he was doing was wrong because God had ordered him to act. In pointing the pistol at Johnson, Davis did not think, for example, that he was peeling a banana; he wasn't psychotic to an extreme degree, as the victim readily recognizes when he notes that Davis 'did have this minimal degree of awareness of his actions.' That is sufficient. The shooting was not accidental, a risk insured against, but intentional.

*Id*. at 347-348, 350 S.E.2d at 620. The *Johnson* court concluded

that a finding of not guilty by reason of insanity does not negate intent, it merely excuses the act of the individual committing the crime. Such an individual can have every intention of performing an act and can also fully intend or expect the consequences of his act.

On the trial docket in this case the trial court noted, "The court holds that an insane individual cannot commit an intentional act within the meaning of an intentional injury clause." We believe, however, that the test for capacity in criminal cases is necessarily different from the test that must be applied in a civil context. Our consideration turns to whether there is any relationship between the insanity defense in criminal cases and a person's mental capacity to perform intentional acts in a civil context.

In *Mallin v. Farmers Ins. Exchange, supra,* a man shot and killed three individuals in his home, after which he shot and killed himself. Representatives of the deceased victims brought suit against the estate of the assailant, claiming that the shootings were not "intentional acts" within the meaning of the assailant's homeowners policy. The representatives of the victims argued that the assailant lost control of himself and thus lost control over his actions. However, the court in the *Mallin* case held that there was no evidence that the casualties did not result from intentional acts of the insured. The court stated that the assailant's "supposed inability to *control* his acts is not the same as an inability to *intend* his acts." *Mallin*, 839 P.2d at 107. The court noted that the testimony at the trial indicated that the assailant, at the time of the homicides, did not have the mental capacity to commit a crime.

> "The offered testimony on [the assailant's] supposed criminal insanity is necessarily based on claimants' supposition that there is some relationship between the insanity defense in criminal cases and a person's mental capacity to perform volitional or intentional acts in a civil context. Any such relationship, if one exists at all, is tenuous at best."

*Id.* at 108. The *Mallin* court concluded:

> Insanity and the consequent freedom from criminal liability are much different from the mental capacity to

perform a legal act, an act which will be deemed effective under the civil law. If this were a will contest case, for example, a person challenging the mental capacity of a testator to execute a will would have to introduce evidence showing that the testator did not have the capacity to understand the nature of the estate and the ordinarily expected objects of the will rather than testimony relating to the testator's incompetency to commit a crime. If a person's capacity to marry or to make a contract were the subject of litigation, testimony based on the M'Naghten rule would not be very useful or pertinent to the issues at hand. The issue in this case is whether, under the terms of this insurance policy, Alex intended to kill his victims. The claimants' expert witness, Dr. Glovinsky, testified that [the assailant] did intend to kill the victims. There is no evidence to the contrary.

*Id.*

We conclude that the test for capacity in criminal cases is not the same as the test for capacity in the present case. An adjudication of criminal insanity does not preclude a contrary finding in a related civil action.

As stated previously, the homeowners's policy in this case provided, in relevant part: "1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage: a. which is expected, anticipated, foreseeable or intended by the insured; . . . ."

Under this provision of the insurance policy, if Mark Ehlert intended to injure Stanley Rozell, the exclusionary clause applies and Economy has no duty to defend or indemnify Mark Ehlert. A nearly identical insurance provision has previously been interpreted by this court in *State Farm Fire & Cas. Co. v. Van Gorder*, 235 Neb. 355, 455 N.W.2d 543 (1990), and in *State Farm Fire & Cas. Co. v. Victor*, 232 Neb. 942, 442 N.W.2d 880 (1989). In those cases this court concluded that an injury is expected or intended from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury or if the character of the act is such that an intention to inflict an injury can be inferred as a matter of law.

In the case at bar, the parties stipulated to the facts upon the

motions for summary judgment. Included in the stipulated facts was Mark Ehlert's statement to the Omaha Police Department made after the shootings. Also, the reports of two psychiatrists that examined Mark Ehlert after the incident were included with the stipulated facts. Although psychotic, and legally insane at the time of the shooting, one expert concluded that Mark Ehlert was competent to stand trial for the crimes.

The evidence is clear that Mark Ehlert intended to shoot and injure Stanley Rozell. In his statement to the Omaha Police Department, Mark Ehlert admitted that he intended to shoot and injure Stanley Rozell:

Q. How many times did you shoot Dwight?

A. Once.

Q. Did you shoot anyone else?

A. Yes I shot I shot his friend Stan also.

Q. OK when you got home today what happened at the house prior to the shooting?

A. Ohh upon entering the house I found him painting in the bathroom and I was so worked up and so angry at my father forsaking me my true father that I took it out on him I just said hey where was I born and he said why you were born in Omaha and I said no I wasn't I told him I was born in Israel so I punched him I punched him once in the ribs and uhh then went for my gun and shot him and then shot the other guy in the back yard as he was trying to get away.

. . . .

Q. Ok Stan was painting with uhh with your father or with Dwight and he after you shot Dwight he ran out the door?

A. Uhh Huh (Affirmative).

Q. Ok and then you followed him out of the house?

A. Out the back door.

Q. Where was he at when you shot him?

A. In the back yard just just rounding the turn on the side of our uhh around uhh around an aluminum shed and going for the gate to head out into the front yard and just as he was turning the corner I shot him and then he fell and rolled up against the fence and (unclear).

Q. So how many shots were fired total?

A. Uhh I think I fired three one one at Dwight and uhh two at Stan I think I shot him the second time when he was on the ground I wasn't sure.

One of the psychiatrists, Dr. Bruce Gutnik, specifically asked Mark Ehlert why he shot Stanley Rozell. Ehlert answered that Mr. Rozell "is a dirty old fool who made homosexual advances towards me when I was 13 years old and he was drunk." Ehlert told the other psychiatrist, Dr. Stan Moore, that "it was God's will that his father Dwight Ehlert and his father's friend, Stanley Rozell, be killed." Ehlert readily admitted to Dr. Moore that he shot his father and Stanley Rozell with the intent to kill them. Dr. Moore noted that Mark Ehlert "described pointing an M1 automatic rifle at his father's chest and stated that he then followed Mr. Rozell out of his father's house and shot him."

We conclude that the evidence was sufficient to support the allegation that Mark Ehlert intended to shoot and injure Stanley Rozell. Regardless of Ehlert's reasons for shooting his father and Stanley Rozell, the evidence is that he was aware of what he was doing and intended the resulting injury. The fact that Ehlert was found to be insane at the time of the shooting and consequently not criminally responsible for his actions does not affect the determination that he intended his actions. As stated above, we hold that while an insane or mentally ill insured may be unable to form the criminal intent necessary to be criminally liable for his or her actions, such an individual can still intend or expect the results of the injuries he or she causes.

In the case at bar, there was no evidence that the shooting injury of Stanley Rozell did not result from the intentional acts of the insured. Specifically there was no contrary evidence that Ehlert did not intend to shoot and injure Stanley Rozell. Accordingly, we hold that the exclusionary clause at issue in this appeal applies and Economy Preferred Insurance Company is not obligated to defend Mark Ehlert and indemnify Stanley Rozell.

The judgment of the district court of Douglas County is reversed, and the cause remanded with directions to enter summary judgment in favor of Economy Preferred Insurance

Company. The award of attorney's fees to Mark Ehlert also is reversed.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., not participating in the decision.

LANPHIER, J., not participating.