PROFESSIONAL FIREFIGHTERS OF OMAHA, LOCAL 385, APPELLANT AND CROSS-APPELLEE, V. CITY OF OMAHA, APPELLEE AND CROSS-APPELLANT.
498 N.W.2d 325

Filed April 9, 1993. No. S-90-1206.

John P. Fahey and Gerellen R. Rome, of Broom, Johnson, Fahey & Clarkson, for appellant.

Herbert M. Fitle, Omaha City Attorney, James E. Fellows, and Wendy E. Hahn for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

# I. STATEMENT OF CASE

The plaintiff-appellant, Professional Firefighters of Omaha, Local 385, a labor organization, seeks a declaration that the defendant-appellee, the City of Omaha, is required to provide specialized aircraft rescue and firefighting services to its airport authority. Concluding that the city is under no mandatory duty to provide such services to the authority, the district court granted the city's motion for summary judgment. The local has appealed, asserting that the district court erred in so ruling. The city has cross-appealed, asserting that the local lacks standing to sue. We affirm.

# II. SCOPES OF REVIEW

Summary judgment is properly granted only when the record discloses that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the movant is entitled to judgment as a matter of law. *Economy Preferred Ins. Co. v. Mass*, 242 Neb. 842, 497 N.W.2d 6 (1993); *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993); *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993); *Jaramillo v. Mercury Ins. Co.*, 242 Neb. 223, 494 N.W.2d 335 (1993). In reviewing an order sustaining a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences that may be deduced from the evidence. *Abdullah v. Gunter*, 242 Neb. 854, 497 N.W.2d 12 (1993); *Economy Preferred Ins. Co. v. Mass, supra*; *Parrish v. Omaha Pub. Power Dist., supra*.

However, on matters of law, including the interpretation of statutes, we, as an appellate court, have an obligation to reach an independent, correct conclusion irrespective of the determination made by the trial court. *Stratbucker Children's Trust v. Zoning Bd., ante* p. 68, 497 N.W.2d 671 (1993); *Sports Courts of Omaha v. Meginnis, supra*; *Curry v. State ex rel. Stenberg*, 242 Neb. 695, 496 N.W.2d 512 (1993); *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 496 N.W.2d 459 (1993).

## III. FACTS

Pursuant to the Nebraska Cities Airport Authorities Act, Neb. Rev. Stat. ch. 3, art. 5 (Cum. Supp. 1957), the city created the authority on March 3, 1959. The city then, while retaining title, conveyed to the authority the use of real property upon which the authority constructed an airport terminal and related facilities.

Under a series of cooperative agreements, the city, for the ensuing three decades, provided the authority with city firefighters. The authority supplied this airport firefighting unit with housing and with special equipment which enabled the unit to conduct aircraft rescue and firefighting operations, a specialized firefighting service.

In 1977, the authority began reimbursing the city 50 percent of the airport unit personnel costs and in 1984 increased its reimbursement to 66 percent. On January 19, 1990, the authority decided to discontinue its cooperative arrangements with the city and to hire its own personnel to perform the specialized firefighting services the city's employees had been performing with the authority's equipment.

Having previously expressed its displeasure with the authority's decision to hire its own specialized firefighters, the city then removed its firefighters from the airport and reassigned these 12 employees throughout its fire division. Thus, none of its employees suffered a reduction in classification or benefits.

As the recognized collective bargaining representative for the employees of the city's fire division, the local contends that the removal of the city's firefighters from the airport reduced the division's numbers, thereby reducing the local's membership and revenue.

## IV. ANALYSIS

Although the issue is not raised by the parties, at first blush it would appear that the authority is an "indispensable party" to the adjudication of this matter. Such, however, proves not to be the case.

An indispensable party is one whose interest in the subject matter of the controversy is such that the controversy cannot be

finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. See *Helter v. Williamson*, 239 Neb. 741, 478 N.W.2d 6 (1991).

In determining whether the authority is such a party, it must be borne in mind that the local asks only that the city be compelled to provide the authority with specialized firefighting services; the local does not ask that the authority be prevented from also providing its own such services if it wishes or that it be required to pay the city for any services the city provides. Admittedly, it would be wasteful in the extreme for both the city and the authority to provide the same firefighting services, but this lawsuit does not concern itself with waste or with what the authority may or may not do; it concerns itself solely with the obligation of the city to provide specialized firefighting services.

While a portion of the definition of indispensable party speaks in terms of not ending up with a final determination which "may be wholly inconsistent with equity and good conscience," that phrase relates not to questions of general policy, but to some legal right of the indispensable party.

Thus, we move on to the issues raised by the parties, which, as noted in part I, are (1) the city's claim on cross-appeal that the local lacks standing to bring this action and (2) the local's claim that the district court wrongly decided the city had no duty to provide specialized firefighting services to the authority.

### 1. STANDING

As the city correctly urges, only a party who has standing may invoke the jurisdiction of a court. *State v. $15,518*, 239 Neb. 100, 474 N.W.2d 659 (1991); *Rexroad, Inc. v. S.I.D. No. 66*, 222 Neb. 618, 386 N.W.2d 433 (1986); *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. 504, 371 N.W.2d 258 (1985); *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 327 N.W.2d 595 (1982); *Stahmer v. Marsh*, 202 Neb. 281, 275 N.W.2d 64 (1979). Stated otherwise, "[o]ne must have some legal interest in the outcome of the litigation in order to

maintain suit." *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. at 898, 327 N.W.2d at 602. Moreover, standing is not a mere pleading requirement but, rather, an indispensable component of a party's case. Standing arises upon a special injury to the suing party itself or on that party's status as a resident taxpayer. *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth., supra.*

(a) Special Injury Status

The local contends that it has standing by reason of a special injury peculiar to itself.

"The remedy of declaratory judgment may be available to a litigant when a controversy exists as a result of a claim asserted against one who has an interest in contesting such claim, the controversy is between persons whose interests are adverse, the party seeking declaratory relief has a legally protectable interest or right in the subject matter of the controversy, and the issue involved is capable of present judicial determination."

*Mullendore v. Nuernberger*, 230 Neb. 921, 925, 434 N.W.2d 511, 514-15 (1989), quoting *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986). See, *Schroder v. City of Lincoln*, 155 Neb. 599, 52 N.W.2d 808 (1952); *Graham v. Beauchamp*, 154 Neb. 889, 50 N.W.2d 104 (1951).

"While not a constitutional prerequisite for jurisdiction of courts of the State of Nebraska (cf. U.S. Const. art. III, § 2), existence of an actual case or controversy, nevertheless, is necessary for the exercise of judicial power in Nebraska. . . .

"The 'case or controversy' prerequisite to maintain litigation applies with equal, if not stronger, force to an action for a declaratory judgment, since the right to maintain the action is expressly granted only to those 'person[s] . . . whose rights, status or other legal relations are affected by a statute.' [Neb. Rev. Stat. § 25-21,150 (Reissue 1989).]

" . . . .

" . . . 'In order to maintain an action to enforce private rights the plaintiff must show that he will be benefited by the relief to be granted.' *Stahmer v. Marsh*, 202 Neb. 281,

284, 275 N.W.2d 64, 66 (1979). . . . 'Clearly, the plaintiff must show that conditions exist which justify the court's exercise of its discretionary power to grant declaratory relief. . . . ' . . . Thus . . . a plaintiff has the burden to prove the existence of a justiciable controversy and an interest in the subject matter of the action.

"Therefore, a plaintiff in a declaratory judgment action challenging the validity of a statute must prove that the plaintiff is a person 'whose rights, status or other legal relations are affected' by the challenged statute. See § 25-21,150."

*H.H.N.H., Inc. v. Department of Soc. Servs.*, 234 Neb. 363, 367, 451 N.W.2d 374, 376-77 (1990), quoting *Mullendore v. Nuernberger, supra.*

The city argues that the local has failed to make a showing that its rights or status is affected by the city's ultimate acquiescence in the authority's decision. Because all of the city's firefighters, with but one or two exceptions, maintain membership in the local, the local argues that the 12 lost positions at the airport automatically translated not only into a present loss of membership and accompanying dues but to a future loss as well.

Even assuming for the purpose of this analysis, but not deciding, that the city by contract or other means can bind itself to never reduce the size of its fire division for any reason, we have been provided no evidence that the city purported to undertake such an obligation. That being so, the local has failed to prove that it is a party "whose rights, status or other legal relations are affected" by the city's acquiescence in the authority's decision. Therefore, the local does not have "special injury" standing.

### (b) Taxpayer Status

However, the local claims that it nonetheless has standing to bring this action by reason of its status as a resident taxpayer. We have long recognized that a taxpayer, for the benefit of a municipal or public corporation, may commence and prosecute to judgment an equitable action to enforce a right of action which the governing body has refused to enforce. *Nebraska*

*Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. 504, 371 N.W.2d 258 (1985), citing *Shepard v. Easterling*, 61 Neb. 882, 86 N.W. 941 (1901), *overruled on other grounds, Wilson v. Otoe County*, 71 Neb. 435, 98 N.W. 1050 (1904). "There is an exception to the general interest prohibition where a resident taxpayer (who has a general interest with other taxpayers) sues to enjoin an illegal act by a municipal body." *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. at 507, 371 N.W.2d at 261.

A resident taxpayer may invoke the interposition of a court of equity to prevent the illegal disposition of money of a municipal corporation or the illegal creation of a debt which he or she, in common with other property holders, may otherwise be compelled to pay. *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth., supra; Martin v. City of Lincoln*, 155 Neb. 845, 53 N.W.2d 923 (1952). Moreover, a resident taxpayer, without showing any interest or injury peculiar to itself, may bring an action to enjoin the illegal expenditure of public funds raised for governmental purposes. *Id*. See *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 327 N.W.2d 595 (1982).

"To plead a resident taxpayer's action the plaintiff must allege a demand made upon the municipal or public corporation and a refusal by the corporation to bring the action itself, or facts which show that such a demand would be useless." *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. at 508, 371 N.W.2d at 261-62, citing *Sesemann v. Howell*, 195 Neb. 798, 241 N.W.2d 119 (1976).

The record establishes that the local is a resident taxpayer of the city, that the city removed a fire engine from the airport and allocated $400,000 for the construction of a new firehouse, and that the local made a demand upon the city to provide specialized firefighting services to the authority. These circumstances, coupled with the local's claim that the $400,000 allocation was made necessary because of the city's illegal failure to fulfill its firefighting duty, give the local standing to maintain this action as a resident taxpayer.

## 2. DUTY OF CITY
We thus reach the local's claim that the district court erred in

finding that the city does not have a mandatory duty to provide specialized firefighting services to the authority.

The well-settled rule in this jurisdiction is that a municipal corporation possesses, and can exercise, the following powers and no others: first, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; and third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989); *Jacobs v. City of Omaha*, 181 Neb. 101, 147 N.W.2d 160 (1966); *Christensen v. City of Fremont*, 45 Neb. 160, 63 N.W. 364 (1895). See, *Briar West, Inc. v. City of Lincoln*, 206 Neb. 172, 291 N.W.2d 730 (1980); *Chase v. County of Douglas*, 195 Neb. 838, 241 N.W.2d 334 (1976).

A municipality is a creature of the Legislature and derives its powers from that source. *Obitz v. Airport Authority of the City of Red Cloud*, 181 Neb. 410, 149 N.W.2d 105 (1967). The city, by virtue of its metropolitan classification, is governed by chapter 14 of the Revised Statutes. Cities of the metropolitan class have the express power

> (2) to purchase, lease, lease with option to buy, acquire by gift or devise, and hold real and personal property within or without the limits of the city for the use of the city, and real estate sold for taxes, (3) to sell, exchange, lease, and convey any real or personal estate owned by the city, in such manner and upon such terms as may be to the best interests of the city . . . (4) to make all contracts and do all other acts in relation to the property and concerns of the city necessary to the exercise of its corporate or administrative powers, and (5) to exercise such other and further powers as may be conferred by law.

Neb. Rev. Stat. § 14-101 (Reissue 1991). In addition to these general powers, metropolitan-class cities have the authority

> [t]o make and enforce all police regulations for the good government, general welfare, health, safety, and security of the city and the citizens thereof in addition to the police powers expressly granted herein; and in the exercise of the police power, to pass all needful and proper ordinances and impose fines, forfeitures, penalties, and

imprisonment at hard labor for the violation of any ordinance, and to provide for the recovery, collection, and enforcement thereof; and in default of payment to provide for confinement in the city or county prison, workhouse, or other place of confinement with or without hard labor as may be provided by ordinance.

Neb. Rev. Stat. § 14-102(25) (Cum. Supp. 1992).

Statutes granting powers to municipalities are to be strictly construed, and where doubt exists, such doubt must be resolved against the grant. *Briar West, Inc. v. City of Lincoln, supra*; *Nelson-Johnston & Doudna v. Metropolitan Utilities District*, 137 Neb. 871, 291 N.W. 558 (1940).

The clear import of §§ 14-101 and 14-102 is that the city has the power to provide firefighting services to the authority. In addition, Omaha Mun. Code, ch. 1, § 1.8, provides: "The police power of the city is hereby extended to include all lands or property owned or leased by the city or any agency of the city and the general ordinances of the city shall be applicable on such property."

In arguing that the city cannot abdicate its responsibility to provide firefighting services to the authority, the local overlooks that the city continues to provide the same regular firefighting services to the authority as it does to the rest of the city. All that the city has done is to reassign firefighters who had been providing the authority with specialized firefighting services.

*Claspill v. City of Springfield*, 598 S.W.2d 183 (Mo. App. 1980), is factually similar. Therein, the firefighters' union brought an action alleging that the municipality violated its charter by removing the firefighting responsibilities at the municipal airport from the municipality's fire department and transferring such responsibilities to the aviation board. In affirming the lower court's judgment for the municipality, the *Claspill* court found that the municipality had authority under its charter to assign the firefighting function to the board. Like the city in the situation at hand, the municipality in *Claspill* continued to provide the airport regular firefighting services. In no sense did the city in the case at hand abdicate its firefighting responsibilities to the authority.

The local further contends that the city should not be permitted to allow the authority to perform its own specialized firefighting services because there is no guarantee that the authority will do so competently. This contention overlooks that the authority is required to comply with federal law regarding aviation safety. Federal Aviation Administration regulations in 14 C.F.R. part 139 (1992) establish the standards and procedures the authority must meet in this regard; the record establishes that the failure to meet them would adversely affect the authority's ability to conduct airline operations.

And the local's position fails on yet another ground. The Nebraska Cities Airport Authorities Act, Neb. Rev. Stat. §§ 3-201, 3-239, and 3-501 to 3-514 (Reissue 1991 & Cum. Supp. 1992), provides:

> Any city may create an airport authority to be managed and controlled by a board, which board, when and if appointed, shall have full and exclusive jurisdiction and control over all facilities owned or thereafter acquired by such city for the purpose of aviation operation, air navigation, and air safety operation. . . . Each such board shall be a body corporate and politic, constituting a public corporation and an agency of the city for which such board is established.

§ 3-502 (Reissue 1991).

The local suggests the foregoing should be read so as to limit the authority to controlling only air safety. But in construing a statute, it is presumed that the Legislature intended a sensible rather than an absurd result. *Houska v. City of Wahoo*, 235 Neb. 635, 456 N.W.2d 750 (1990); *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). The reading espoused by the local would be nonsensical, for an authority's interest does not end upon the touching of an aircraft's wheels to the ground; an authority is concerned with all aspects of getting an aircraft and its occupants safely into and out of an airport. When § 3-502 is read in light of § 3-504(17) (Reissue 1991), which provides that an authority shall have the power "[t]o do all things necessary or convenient to carry out the powers expressly conferred on such

authorities" by the act, we must conclude that the authority has the right to control more than air safety and has the right to provide itself with specialized firefighting services.

Moreover, § 3-513 (Reissue 1991) provides: "Insofar as the provisions of [the Cities Airport Authorities Act] are inconsistent with the provisions of any other act or of any city charter, if any, the provisions of [the Cities Airport Authorities Act] shall be controlling." Section 3-513 is, in effect, a type of supremacy clause, which nullifies any inconsistent statutory or municipal charter provisions. Therefore, § 3-513 empowers the authority to assume responsibility for specialized firefighting duties, irrespective of the city's desires in the matter.

## V. JUDGMENT

The record failing to sustain either the city's or the local's assignment of error, the judgment of the district court is affirmed.

AFFIRMED.

BOSLAUGH, J., concurring.

I concur in the judgment of the court that the judgment of the district court dismissing the petition of the plaintiff should be affirmed, but for different reasons.

The amended petition contains no allegation of an illegal expenditure of tax funds by the defendant. The affidavit of Randall Hoke, which recites that the defendant is allocating $400,000 for a new firehouse, does not say that this is illegal. Consequently, I would hold that the plaintiff failed to allege any facts showing that it had standing to seek declaratory or injunctive relief.

In reaching its decision, the court found it necessary to decide that the defendant had no duty to provide specialized firefighting services to the airport authority. It seems to me that the authority is a necessary party if its rights are to be determined. See *Marsh v. Marsh*, 173 Neb. 282, 113 N.W.2d 323 (1962).

HASTINGS, C.J., joins in this concurrence.

WHITE, J., concurring.

I join in only so much of the concurring opinion of Justice

Boslaugh as suggests that the airport authority was a necessary party to this action.