REQUESTED BY: Senator Ron Withem Nebraska State Legislature
You have requested the opinion of this office concerning the authority of municipalities to accept credit cards for payment of certain fees. You specifically requested advice regarding whether the Legislature would have to affirmatively act in order to allow cities to perform such a function. Due to the number of variables involved, and that no one statute or case appears to control the issue raised, there does not appear to be any one clear answer to your inquiry.
We note you mentioned in your request that in a cursory review of the statutes, you found no statutory prohibition against the acceptance of credit card payments for municipal fees. In our research, we likewise did not find any statute prohibiting this practice. However, due to the nature of the area of law involved, that determination alone does not answer the issue.
It is well established in Nebraska that municipalities have only those powers which are expressly conferred on them by statute, are necessary or fairly implied in order to carry into effect some enumerated power, or are essential to the declared objects and purposes of the municipal corporation. State exrel. Ransom v. Irey, 42 Neb. 186, 60 N.W. 601 (1894); Giger v.City of Omaha, 232 Neb. 676, 442 N.W.2d 182 (1989);Professional Firefighters Local 385 v. Omaha, 243 Neb. 166,498 N.W.2d 325 (1993). The Nebraska Supreme Court has also stated that the powers a municipal corporation may exercise as essential to its declared purposes must be indispensable, not simply convenient. Giger at 688, 442 N.W.2d at 192; ProfessionalFirefighters at 174, 498 N.W.2d at 331. Under normal circumstances it would not seem necessary for a city to accept credit cards for municipal fee payments in order to carry out an enumerated power, and such action would not be essential to the declared purposes of a city.
Nebraska statutes establish several classes of cities, according to their population. These categories classify cities as metropolitan, primary, first class, second class, and villages. Separate sets of statutes establish the powers available to the cities within each class. There are also statutes which apply to all cities and villages. See Neb. Rev. Stat. §§ 18-131 to 18-2808. There is no statute specifically granting all municipalities the power to accept credit cards as payment for all types of municipal fees. Despite the lack of explicit statutory language controlling the issue, some statutes may grant certain classes of Nebraska cities the authority to accept credit card payments for certain fees.
One statute which may authorize acceptance of credit cards for municipal fees is Neb. Rev. Stat. § 18-509. That statute begins by stating that "The mayor and city council of any city, or the board of trustees of any village, in addition to other sources of revenue available to the city or village, may by ordinance set up a rental or use charge, to be collected from users of any system of sewerage, and provide methods for collection thereof. . . ." Neb. Rev. Stat. § 18-509(1) (1991). Similar language is provided specifically for metropolitan cities in § 14-365.10 (1991). The term "methods for collection" is not defined, and it is not clear whether such a term would be broad enough to allow a city to enact ordinances establishing acceptable methods of payment, such as credit cards, as well as collection procedures such as mailing monthly bills. If it were determined that "methods for collection" includes setting acceptable payment methods, the statute would appear to allow, by fair implication, municipalities to accept credit cards for payment of fees if authorized by ordinance.
It should be pointed out that § 18-509 applies only to fees charged for sanitary sewer services, not all municipal fees. Also, the statute goes on to state:
 All money raised from the charges . . . shall be used for maintenance or operation of the existing system, for payment of principal and interest on bonds issued . . . or to create a reserve fund for the purpose of future maintenance or construction of a new sewer system for the city or village. Any funds raised from this charge shall be placed in a separate fund and not be used for any other purpose or diverted to any other fund.
Neb. Rev. Stat. § 18-509(2) (1991). Again, very similar language is found in § 14-365.10.
The above language raises an additional concern. The acceptance of credit cards would incur the cost of service fees paid to the credit card companies, which would have to be deducted from the total payments collected by the municipality. This payment may conflict with the statutory mandate that "all money" raised must be used for the required purposes. Under such an arrangement, some of the funds would be used to satisfy credit card company service fees and would not be deposited in the separate fund. It is therefore not clear whether credit card payments could be accepted. The Nebraska Supreme Court has stated that "Statutes granting powers to municipalities are to be strictly construed, and where doubt exists, such doubt must be resolved against the grant." Professional Firefighters at 175,498 N.W.2d at 331-32 (1993) (citations omitted). When analyzed using this standard, the potential for ambiguity present in §§18-509 and 14-365.10 indicates that a municipality may not have the authority to accept credit card payments for sanitary sewer system use fees.
There are other examples of statutes which may authorize certain municipalities to accept credit cards, albeit for specific types of fees. Section 19-1404 states:
 19-1404. Municipal heat, light, and ice plants; management; rates; service. When any such utility shall have been established, the municipality shall provide by ordinance for the management thereof, the rates to be charged, and the manner of payment for service or for the product.
Neb. Rev. Stat. § 19-1404 (1991).
The language in the above statute appears to provide cities and villages with the authority to allow payment of certain utility bills with credit cards. Section 19-1404 does not apply to metropolitan cities because it appears in chapter 19, article 14 of the Nebraska Revised Statutes. That article applies to all cities except cities of the metropolitan class. But the authorization extends only to the manner of payment for municipal light, heat, and ice utility services. It does not authorize credit card payments for any other municipal fees. A similar provision authorizing municipalities other than metropolitan class cities to provide by ordinance for the manner of payments for garbage disposal services is set out in Neb. Rev. Stat. §19-2106 (1991).
Neb. Rev. Stat. § 16-682 (1991), which pertains to public utilities operated by cities of the first class, states that "water taxes, rents, or rates shall be paid and collected and such lien enforced in such manner as the council or commission, as the case may be, shall by ordinance direct and provide. . . ." As with the previously mentioned statutes, this statute allows certain cities the authority to enact ordinances allowing for the manner of payment for specified utility services. The statutory language appears to provide cities of the first class with the authority to accept credit cards for payment of water service fees if provided for by ordinance. A similar provision pertaining to waterworks in cities of the second class and villages is set out in Neb. Rev. Stat. § 17-538 (1991).
The above examples provide an illustration of the numerous limitations and variables present in many of the statutes affecting the area of whether municipalities can accept credit card payments for fees. Other statutes specifically mention credit card payments, although not necessarily in the context of municipal services.
Several statutes explicitly authorize credit card payments for fees and costs charged or taxed by courts. See Neb. Rev. Stat. §§ 25-2710 (1995), 29-424 (1995), and 32-1549(5) (Cum. Supp. 1996). Individuals may also pay their fines and costs for handicap parking citations with credit cards. Neb. Rev. Stat. § 18-1741.04 (Cum. Supp. 1996). Neb. Rev. Stat. §81-118.01 (1994) allows state agencies operating a facility in a proprietary capacity to accept credit cards. Although none of the above-mentioned statutes directly state whether municipalities can accept credit card payments, they demonstrate that the Legislature has considered credit card payments for other state entities and political subdivisions and enacted specific legislation to allow such payments. Also, Neb. Rev. Stat. §77-1702 (1996), which deals primarily with taxes, states that "Lawful money of the United States, checks, drafts, money orders or other bills of exchange may be accepted in payment of any state, county, village, township school district or other governmental subdivision tax, levy, excise, duty, custom, toll, penalty, fine, license, fee, or assessment of whatever kind or nature, whether general or special." Id.
As is demonstrated by the above examples, some statutes specifically provide for payments by credit cards, while others provide a list of means acceptable as payment to governmental entities, which does not include credit cards. This language could be interpreted as an indication that the Legislature considered the issue and decided not to provide political subdivisions with the authority to accept credit cards for payment of all types of municipal fees. It is a general rule of statutory interpretation that mention of one thing implies the exclusion of another. Under this principle the enumeration of certain powers implies the exclusion of all other powers not fairly incident to the stated enumerated powers, and an affirmative description of cases in which certain powers may be exercised implies a negative on the exercise of such powers in other cases. Hueftle v. Eustis Cemetery Ass'n., 171 Neb. 293,296, 106 N.W.2d 400, 403 (1960). See also Op. Att'y Gen. No. 95-067 (August 31, 1995).
In conclusion, when determining whether municipalities have the ability to accept credit cards for payment of certain municipal fees, one clear answer controlling the issue does not appear available due to the number of variables which must be taken into account. Considerations such as the class of city involved, whether the statute includes language requiring all money collected to be deposited in designated funds, and the type of fee, such as utility charges or fines, can all affect the answer.
In order for it to be clear that all classes of municipalities are granted the authority to accept credit card payments for all types of municipal fees, legislation may be necessary. If the Legislature would deem such legislation appropriate, it may wish to consider whether a provision should be included in the legislation addressing whether incurring credit card service charges are to be considered a power incident to the establishment of credit card acceptance agreements, notwithstanding language in certain statutes that all funds from certain fees be deposited in specific funds.
Sincerely,
 DON STENBERG Attorney General
 Timothy J. Texel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved:
Don Stenberg
Attorney General