H.H.N.H., Inc., appellant, v. Department of Social
Services, State of Nebraska, et al., appellees.

451 N.W.2d 374

Filed February 9, 1990.    No. 88-388.

Donald H. Bowman and Mark J. Krieger for appellant.

Robert M. Spire, Attorney General, Royce N. Harper, and Melanie J. Whittamore, and Terry Schmitt for appellees.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Caporale, J.

Pursuant to Neb. Rev. Stat. § 84-911 (Reissue 1987), plaintiff-appellant H.H.N.H., Inc., sought a declaratory judgment to negate the effect of regulations allowing defendant-appellee Nebraska Department of Social Services to recapture certain depreciation payments the department had made to plaintiff as the operator of a nursing home facility. Plaintiff asserts the district court erred in refusing to declare these regulations unconstitutional as applied to it. We reverse the judgment of the district court and remand with direction the action be dismissed for lack of a justiciable issue.

The department is responsible for the administration of the medical assistance program (medicaid) in the State of Nebraska. See Neb. Rev. Stat. §§ 68-1018 et seq. (Reissue 1986). In administering the program, the department

reimburses nursing home facilities for the cost of care to medicaid-eligible patients. The department determines payment or reimbursement rates for a nursing home in the medicaid program based on reasonable costs incurred by the facility. The expenses for which a nursing home can be reimbursed include, among other things, reasonable depreciation costs with respect to a facility's real property.

Plaintiff purchased a nursing home in Kenesaw, Nebraska, on July 1, 1976, and operated the facility from that time until selling it 9 years 9 months later on March 31, 1986. Throughout this period, plaintiff was enrolled as a certified provider under the medicaid program.

Effective October 17, 1977, the department, which at that time was known as the Nebraska Department of Public Welfare, adopted regulations providing for the recapture of depreciation expenses which were being paid, i.e., "reimbursed," to nursing homes. These regulations allowed medicaid providers to claim, as a reimbursable expense, straight-line depreciation on a nursing home's real property, but the regulation also allowed the department to recapture at least a portion of reimbursed depreciation expenses if the facility realized a gain on the sale of real property within 1 year of termination as a participant in the medicaid program. An exemption to the recapture rule provided that if a health care provider left the medicaid program for a period of 1 year and later disposed of real property, no depreciation would be recaptured under the October 17, 1977, regulation. See Nebraska Department of Public Welfare State Plan and Manual, part IX-6000, supp. A, § 1500 (October 17, 1977).

Effective July 1, 1980, the department revised its regulations dealing with the recapture of depreciation expenses by eliminating the ability of a provider to leave the medicaid program for a 1-year period and thereby avoid the department's recapture of the depreciation expenses previously paid to the provider. Inserted instead into the recapture provision was the following exemption:

> The provisions of this section [i.e., the section providing for recapture of depreciation expenses] shall not apply if:
> (1) the same person, partnership or corporation has

owned the same long term care facility as a Title XIX certified provider, for a period of ten (10) or more consecutive years . . . .

Nebraska Public Welfare Manual, part IX-6000, supp. A, § 1500 at 7 (July 1, 1980).

Effective December 1, 1984, the department again revised its regulations, eliminating all exemptions to the recapture of depreciation provisions. See 471 Neb. Admin. Code, ch. 12, § 011.08D (1984). This final revision was effective through the time that plaintiff sold its Kenesaw nursing home, and provided no avenues for a health care provider to avoid the recapture of depreciation reimbursements in the event of a gain on the sale of real property. The department's long-term-care audit manager testified that the 1984 revision in the regulation was prompted by Congress' passage of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494 (1984). He also testified that the department determined that it was necessary to discontinue the 10-year exemption in the recapture of depreciation regulation in order to comply with Pub. L. No. 98-369. The parties stipulated that each of the regulations discussed above was properly promulgated as required by Neb. Rev. Stat. § 84-907 (Reissue 1987).

When it sold its Kenesaw nursing home, plaintiff and the department entered into a settlement agreement with respect to $133,216 in recaptured depreciation which the department claimed as a result of the sale. As part of this settlement agreement, plaintiff paid $133,216 into an escrow account. The agreement which governs this account provides the following within a paragraph entitled "Reason for Escrow":

Pursuant to [471 Neb. Admin. Code, ch. 12, § 011.16 (1984)], the Department has demanded that [plaintiff] either pay or make arrangements to pay all sums claimed to be due for recapture of depreciation . . . . [Plaintiff] disputes the amounts claimed to be due and disputes whether the Department has a valid legal claim for such recapture. [Plaintiff] and the Department shall deposit such sums into escrow pending resolution of such disputes.

By stipulation, the parties agree that the $133,216 figure

represents recaptured depreciation for the period from October 17, 1977, the effective date of the department's initial depreciation recapture regulations, through the date of the sale of the nursing home. While plaintiff had owned the Kenesaw nursing home for only 9 years 9 months, the parties further stipulated that even if plaintiff had maintained ownership of the Kenesaw nursing home for an additional 3 months, that is, through July 1, 1986, the department would not have allowed the 10-year exemption which had been available under the 1980 regulation because that exemption had been repealed on December 1, 1984.

At the trial level, plaintiff sought a declaration that the recapture of depreciation regulations as originally promulgated in 1977 and as revised in 1984 were unconstitutional due to their alleged retroactive effect. The district court determined that plaintiff had no vested interest in the continuance of regulations which would have allowed it to avoid repaying the $133,216 claimed by the department. See, *Alcoholic Resocialization Conditioning Help, Inc. v. State,* 206 Neb. 788, 295 N.W.2d 281 (1980); *Hodges v. Fitle,* 332 F. Supp. 504 (D. Neb. 1971). See, also, *Adams Nursing Home of Williamstown, Inc. v. Mathews,* 548 F.2d 1077, 1081 (1st Cir. 1977), where, in a somewhat similar case, the court noted that "any expectation [medicare] providers had must have been discounted by an awareness that they were joining a new government program, subject to ongoing regulation . . . ."

The recapture of depreciation rules which were promulgated on October 17, 1977, operated from that date forward and thus did not have a retroactive effect and therefore could not violate plaintiff's right to due process. Apparently realizing this, plaintiff has appropriately abandoned its attack on the department's initial adoption of depreciation recapture rules. Plaintiff's assigned errors instead assert only that the department's elimination of all exemptions to the depreciation recapture rules deprived plaintiff of a property interest without due process of law. Thus, in this appeal, plaintiff asks this court to strike down the 1984 revision to the department's depreciation recapture regulations as applied to it and thereby implicitly declare that plaintiff is entitled to the exemption from

the depreciation recapture rule which had previously been available to a party owning a nursing home for at least 10 years. However, a review of applicable case law along with the facts of this case elucidates that the issue presented is one we may not decide.

In *Mullendore v. Nuernberger*, 230 Neb. 921, 925-27, 434 N.W.2d 511, 515-16 (1989), this court stated:

> While not a constitutional prerequisite for jurisdiction of courts of the State of Nebraska (cf. U.S. Const. art. III, § 2), existence of an actual case or controversy, nevertheless, is necessary for the exercise of judicial power in Nebraska. . . .
>
> The "case or controversy" prerequisite to maintain litigation applies with equal, if not stronger, force to an action for a declaratory judgment, since the right to maintain the action is expressly granted only to those "person[s] . . . whose rights, status or other legal relations are affected by a statute." [Neb. Rev. Stat. § 25-21,150 (Reissue 1989).]
>
> . . . .
>
> . . . "In order to maintain an action to enforce private rights the plaintiff must show that he will be benefited by the relief to be granted." *Stahmer v. Marsh*, 202 Neb. 281, 284, 275 N.W.2d 64, 66 (1979). . . . "Clearly, the plaintiff must show that conditions exist which justify the court's exercise of its discretionary power to grant declaratory relief. . . ." . . . Thus . . . a plaintiff has the burden to prove the existence of a justiciable controversy and an interest in the subject matter of the action.
>
> Therefore, a plaintiff in a declaratory judgment action challenging the validity of a statute must prove that the plaintiff is a person "whose rights, status or other legal relations are affected" by the challenged statute. See § 25-21,150.

Similarly, a plaintiff in a declaratory judgment action challenging the validity of a regulation must prove that he or she is a person whose legal rights and privileges are or may be impaired by the challenged regulation. See § 84-911.

Thus, while *Mullendore* involved a challenge to a statutory

provision pursuant to Neb. Rev. Stat. § 25-21,150 (Reissue 1989), the quoted language applies equally to a challenge to a regulatory provision pursuant to § 84-911. With that premise in mind, we now examine the substance of plaintiff's appeal.

Assuming that this court were to grant the relief sought by plaintiff and thereby hold that plaintiff is entitled to the previously available 10-year exemption, plaintiff would still not benefit from the granting of such relief. To qualify for the exemption under which plaintiff seeks to benefit, plaintiff is required to have owned the Kenesaw nursing home for 10 consecutive years, not 9 years 9 months. Consequently, even if this court were to strike down the 1984 revision to the department's depreciation recapture rules and thereby make the prior exemption to those rules available to plaintiff, plaintiff would not qualify for the exemption. Thus, plaintiff could not benefit from a favorable ruling by this court.

It is true that the parties have stipulated that "[e]ven if the plaintiff maintained ownership through July 1, 1986, the ten-year exemption would not have been allowed by the [department] due to this regulation's repeal effective December 1, 1984." Plaintiff apparently believes that this stipulation entitles it to the 10-year exemption without complying with the requirement that plaintiff own the facility for 10 years. However, even assuming that the department could legally make such a concession, it clearly has not done so. The stipulation merely states that the department's position was that the 10-year exemption would not be available to plaintiff even if plaintiff had held the property for 10 years. Plaintiff fails to bridge the logical gap between the stipulation and the conclusion that it is entitled to the benefit of the 10-year exemption without complying with the requirements of the 10-year exemption.

Because plaintiff cannot benefit from the relief it seeks, it has failed to prove the existence of an actual controversy, and thereby fails to present a justiciable issue in this appeal.

REVERSED AND REMANDED WITH
DIRECTION TO DISMISS.