Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/10/2020 09:07 AM CST

Rev. Stephen C. Griffith and Senator Ernie
Chambers, appellants, v. Nebraska
Department of Correctional
Services et al., appellees.
___ N.W.2d ___

Filed October 18, 2019.    No. S-18-569.

1. **Standing: Jurisdiction: Judgments: Appeal and Error.** Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from those of a trial court.
2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
3. **Standing: Jurisdiction.** A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding.
4. **Standing.** Standing relates to a court's power to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Amy A. Miller, of American Civil Liberties Union of Nebraska, Christopher L. Eickholt, of Eickholt Law, L.L.C., and David Litterine-Kaufman, Rene Kathawala, and Suzette J. Barnes, of Orrick, Herrington & Sutcliffe, L.L.P., for appellants.

Douglas J. Peterson, Attorney General, and Ryan S. Post for appellees.

- 288 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
304 NEBRASKA REPORTS
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ., and ARTERBURN, Judge.

PAPIK, J.

Two Nebraska citizens brought this action alleging that the Nebraska Department of Correctional Services (DCS) did not comply with statutory and constitutional requirements when, in January 2017, it adopted an "Execution Protocol," a regulation setting forth how death sentences are to be carried out. The plaintiffs, proceeding under Neb. Rev. Stat. § 84-911 (Reissue 2014), asked that the Execution Protocol be declared void and that DCS and other defendants be enjoined from carrying out executions under the Execution Protocol. The district court, however, found that the plaintiffs lacked standing to bring the action and dismissed it without reaching the merits.

On appeal, we reach the same conclusion as the district court. The plaintiffs do not face death sentences, and thus the Execution Protocol does not impair or threaten to interfere with their legal rights. And while we have recognized, under our common law of standing, some exceptions to the requirement that a plaintiff show a concrete injury to his or her legal rights in order to invoke a court's jurisdiction, we find that those exceptions do not apply in an action brought under § 84-911. Accordingly, we affirm the district court's dismissal.

## BACKGROUND

*Adoption of Execution Protocol.*

Plaintiffs are Rev. Stephen C. Griffith and Senator Ernie Chambers (hereinafter collectively Plaintiffs). Griffith is a retired minister. Chambers is a member of the Nebraska State Legislature. Both are Nebraska citizens.

Plaintiffs' allegations in this case center on DCS' adoption of an Execution Protocol. After the 2016 general election in which Nebraska voters, via referendum, repealed a 2015 law that abolished the death penalty, DCS sought to make revisions to its Execution Protocol. The Execution Protocol is a

regulation that sets forth the process to be followed when carrying out a death sentence. Generally, the Execution Protocol provides for how drugs for lethal injection procedures shall be obtained, verified, and maintained; notification requirements; and the process for carrying out executions. 69 Neb. Admin. Code, ch. 11 (2017).

Plaintiffs allege that after DCS announced that it was considering revisions to the Execution Protocol and would be holding a public hearing on the proposed revisions, Griffith requested information regarding the proposed revisions from DCS. Plaintiffs admit that DCS gave Griffith a draft regulation, but they contend that he was also entitled to a fiscal impact statement and "working copies" of the proposed revisions under Neb. Rev. Stat. § 84-907(2) (Reissue 2014) and that DCS did not give him these materials.

Both Griffith and Chambers later testified at the public hearing on the proposed revisions to the Execution Protocol. They assert, however, that they were unable to provide fully informed testimony, because Griffith was not given access to all the materials to which he was entitled under § 84-907.

Following the public hearing, DCS adopted the Execution Protocol.

*Plaintiffs' Lawsuit.*

Plaintiffs filed this lawsuit against DCS and the following individuals in their official capacities: Gov. John Peter Ricketts, Attorney General Doug Peterson, and DCS director Scott Frakes (hereinafter collectively Defendants). In the lawsuit, Plaintiffs contended that the Execution Protocol should be declared invalid for two reasons.

First, Plaintiffs contended that because Griffith was not given access to all the materials to which he was entitled under § 84-907, the Execution Protocol was adopted without compliance with statutory procedures. Second, and alternatively, Plaintiffs alleged that if "[DCS] did not prepare any drafts or revisions of the . . . Execution Protocol and did not consult

- 290 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

with anyone regarding the [Execution] Protocol," the adoption of the Execution Protocol violated the due process clause of the Nebraska State Constitution.

Plaintiffs requested a declaration that the Execution Protocol was void. They also asked that Defendants be enjoined from carrying out any executions until a new Execution Protocol was adopted.

*District Court's Dismissal.*

Defendants moved to dismiss on the grounds that the district court lacked subject matter jurisdiction and that Plaintiffs failed to state a claim upon which relief can be granted. After a hearing, the district court granted Defendants' motion to dismiss.

In a written order, the district court found that Plaintiffs lacked standing to pursue the action. The district court found that because the Execution Protocol did not affect Plaintiffs' rights, they did not have traditional common-law standing to challenge the validity of the regulation. The district court also found that Plaintiffs did not fall within any of the exceptions to the traditional common-law standing doctrine. It therefore dismissed Plaintiffs' complaint for lack of subject matter jurisdiction.

Plaintiffs appealed, and we granted their petition to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Plaintiffs assign multiple errors on appeal, but they can effectively be condensed into one: that the district court erred in finding that they did not have standing.

## STANDARD OF REVIEW

[1] Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent

- 291 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
304 NEBRASKA REPORTS
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

from those of a trial court. *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999).

[2] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *DeLima v. Tsevi*, 301 Neb. 933, 921 N.W.2d 89 (2018).

## ANALYSIS

*General Principles Regarding*
*Doctrine of Standing.*

The district court dismissed Plaintiffs' lawsuit on the ground that they lacked standing. Before turning to Plaintiffs' contentions that this decision was incorrect, we pause to review some basics regarding the doctrine of standing.

[3,4] A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding. *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010). Standing relates to a court's power to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. See *Ritchhart v. Daub, supra*. The focus of the standing inquiry is not on whether the claim the plaintiff advances has merit; it is on whether the plaintiff is the proper party to assert the claim. See *Heiden v. Norris*, 300 Neb. 171, 912 N.W.2d 758 (2018). Indeed, in considering standing, the legal and factual validity of the claim presented must be assumed. *Id.*

While the U.S. Constitution limits the jurisdiction of federal courts to certain "[c]ases" and "[c]ontroversies," U.S. Const. art. III, § 2, and federal courts have interpreted that language to impose standing requirements for the exercise of federal court jurisdiction, see, e.g., *West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017), the Nebraska Constitution does not contain an analogous provision, see *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989). As we will discuss in more detail below, in some cases, the Legislature provides by statute

- 292 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
304 NEBRASKA REPORTS
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

who has standing to pursue relief. See *Schauer v. Grooms*, 280 Neb. 426, 786 N.W.2d 909 (2010). In other cases, we rely on common-law standards to determine whether a plaintiff has standing. See *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996) (concluding Legislature did not supplant common-law standing doctrine by statute). Our common-law standing doctrine, like other doctrines of justiciability, arises "out of prudential considerations of the proper role of the judiciary in democratic government." *Nebraska Coalition for Ed. Equity v. Heineman*, 273 Neb. 531, 546, 731 N.W.2d 164, 176 (2007).

Our common-law standing inquiry generally focuses on whether the party bringing suit has suffered or will suffer an injury in fact. See, e.g., *Central Neb. Pub. Power Dist. v. North Platte NRD, supra*. We have said that such an injury must be "concrete in both a qualitative and temporal sense" and that it must be "distinct and palpable, as opposed to merely abstract." *Id.* at 542, 788 N.W.2d at 260. We have also phrased the standing inquiry as whether the plaintiff demonstrated a "direct injury" as a result of the action or anticipated action of the defendant and emphasized that it is generally insufficient for a plaintiff to have "merely a general interest common to all members of the public." *Ritchhart v. Daub*, 256 Neb. 801, 806, 594 N.W.2d 288, 292 (1999). Accordingly, in order to have standing to bring suit to restrain an act of a municipal body, the persons seeking such action must usually show some injury peculiar to themselves. See *State ex rel. Reed v. State*, 278 Neb. 564, 773 N.W.2d 349 (2009).

*Does § 84-911 Confer Standing*
*for "Procedural" Injuries?*

Plaintiffs brought this action under § 84-911 and contend that they have standing thereunder. Section 84-911, a provision within Nebraska's Administrative Procedure Act, provides as follows:

- 293 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

(1) The validity of any rule or regulation may be determined upon a petition for a declaratory judgment thereon addressed to the district court of Lancaster County if it appears that the rule or regulation or its threatened application interferes with or impairs or threatens to interfere with or impair the legal rights or privileges of the petitioner. . . .

(2) The court shall declare the rule or regulation invalid if it finds that it violates constitutional provisions, exceeds the statutory authority of the agency, or was adopted without compliance with the statutory procedures.

Plaintiffs' argument for standing under § 84-911 rests on language in our opinion in *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 385-86, 810 N.W.2d 149, 157 (2012), in which we observed that "[g]enerally, § 84-911 requires a plaintiff to have common-law standing to challenge an agency's regulation or its threatened application" and that common-law standing usually requires the demonstration of "an injury in fact that is actual or imminent." Plaintiffs claim they have suffered a loss of their right under Nebraska's Administrative Procedure Act to "informed participation in the regulationmaking process" and that this qualifies as a sufficient injury in fact. Brief for appellants at 11. As we will explain, we find that Plaintiffs do not have standing based on this asserted injury.

Plaintiffs concede that the injury they are claiming in this case is procedural in nature. Indeed, Plaintiffs attempt to distinguish *H.H.N.H., Inc. v. Department of Soc. Servs.*, 234 Neb. 363, 451 N.W.2d 374 (1990), a case in which we found the plaintiffs did not have standing under § 84-911, because their legal rights were not affected by the challenged regulations, as governing only cases in which the *substance* of a regulation is challenged. Plaintiffs, however, do not cite any authority recognizing that a party has injury-in-fact standing based solely on a claim that a procedural right to participate in administrative rulemaking was violated.

- 294 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

In fact, federal courts have rejected the notion that a party has standing to challenge government action merely because a procedural right was violated. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), the U.S. Supreme Court reversed a lower court's decision finding that a party had standing based on a government official's alleged failure to follow a statutory procedure "notwithstanding [the plaintiff's] inability to allege any discrete injury flowing from that failure." The Supreme Court explained that individuals have standing to enforce procedural rights "so long as the procedures in question are designed to protect some threatened concrete interest . . . that is the ultimate basis of . . . standing." 504 U.S. at 573 n.8. Years later, in *Summers v. Earth Island Institute*, 555 U.S. 488, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009), the U.S. Supreme Court relied on its decision in *Lujan* to hold that individuals who claimed they had been denied the procedural right to file comments regarding certain actions by the U.S. Forest Service did not have standing in the absence of a showing that their concrete interests were affected as a result of the alleged procedural violation.

Following *Lujan*, federal courts of appeals have similarly held that a plaintiff claiming a procedural violation suffers the requisite injury for standing purposes only if they also suffered "a concrete injury as a result of the disregarded procedural requirement." *Parsons v. U.S. Dept. of Justice*, 801 F.3d 701, 712 (6th Cir. 2015). See, also, *Iowa League of Cities v. E.P.A.*, 711 F.3d 844 (8th Cir. 2013); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) ("we may recognize a 'procedural injury' when a procedural requirement has not been met, so long as the plaintiff also asserts a 'concrete interest' that is threatened by the failure to comply with that requirement"); *Committee to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996) ("[t]o fully establish injury in fact, a plaintiff must be able to show that a separate injury to its concrete, particularized interests flows from the agency's

- 295 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

procedural failure"); *Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 99 (D.C. Cir. 1995) ("a 'procedural injury' arises where the claimant asserts a substantive injury from the denial of the statutorily required procedure").

We find the rule for procedural injuries set forth in the above federal cases to be especially appropriate for claims brought under § 84-911. Section 84-911(1) provides that the validity of a rule or regulation may be challenged if "it appears that the rule or regulation or its threatened application interferes with or impairs or threatens to interfere with or impair the legal rights or privileges of the petitioner." As we held in *H.H.N.H., Inc. v. Department of Soc. Servs.*, 234 Neb. 363, 367, 451 N.W.2d 374, 377 (1990), this language requires a plaintiff challenging the validity of a regulation under § 84-911 to "prove that he or she is a person whose legal rights and privileges are or may be impaired *by the challenged regulation*." (Emphasis supplied.) Requiring plaintiffs bringing claims under § 84-911 to show that any asserted procedural injury led to a rule or regulation that interferes with or impairs their rights gives effect to the text of § 84-911(1).

As we described above, Plaintiffs' argument for standing under § 84-911 rests on a procedural injury. They cannot, however, show that the procedural injury they assert led to a rule or regulation that interferes with or impairs their rights. Plaintiffs allege that DCS violated procedural requirements in the adoption of the Execution Protocol. The Execution Protocol sets forth how death sentences are to be carried out. Neither of the Plaintiffs is subject to a death sentence. Plaintiffs have not shown and neither can we discern a way in which their rights are threatened or violated by the Execution Protocol.

Faced with the fact that the Execution Protocol itself does not affect their legal rights, Plaintiffs attempt to find refuge in the language in § 84-911(2), which authorizes courts to declare rules and regulations invalid if "adopted without compliance with the statutory procedures." Plaintiffs contend that this language shows the Legislature must have intended to allow

challenges to regulations by individuals asserting the infringement of a procedural right to participate in the regulationmaking process. We are not persuaded.

Section 84-911(2), to be sure, provides that a court may declare a rule or regulation invalid if it finds it was adopted without compliance with statutory procedures, but that subsection addresses the reasons a court may declare a rule or regulation invalid. It does not speak to *who* may seek invalidation, as § 84-911(1) does. We could reach the conclusion Plaintiffs urge only by reading meaning into § 84-911(1) that is not reflected in its text. We do not interpret statutes in that manner. See *State v. Garcia*, 301 Neb. 912, 920 N.W.2d 708 (2018).

For these reasons, we find that Plaintiffs did not have standing under § 84-911 based on their assertion that their procedural rights were violated during the course of DCS' adoption of the Execution Protocol.

*Do Common-Law Exceptions to*
*Injury-in-Fact Standing Apply*
*in Actions Brought Under*
*§ 84-911?*

Plaintiffs argue that even if the district court correctly determined that they did not have standing as a result of their claimed injury to their right to participate in the regulation-making process, they nonetheless have standing as Nebraska taxpayers. Plaintiffs claim they have taxpayer standing for two reasons: first, because they are seeking to enjoin the illegal expenditure of public funds, and second, because this action involves a matter of great public concern.

Plaintiffs' arguments for taxpayer standing are based on cases in which this court has, in the course of applying our common-law standing doctrine, recognized exceptions to the usual requirement that a plaintiff demonstrate an injury in fact that is actual, imminent, concrete, and particularized. See, *Thompson v. Heineman*, 289 Neb. 798, 814, 857 N.W.2d 731, 747 (2015) (describing taxpayer standing as "exception to

- 297 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
304 NEBRASKA REPORTS
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

the injury-in-fact requirement"); *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002) (holding taxpayer had standing to challenge illegal expenditure of public funds); *Cunningham v. Exon*, 202 Neb. 563, 276 N.W.2d 213 (1979) (holding taxpayer had standing to challenge constitutional amendment because it raised matter of great public concern). Furthermore, Plaintiffs correctly point out that in *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 810 N.W.2d 149 (2012), we allowed a taxpayer to bring an action under § 84-911 challenging a regulation that allegedly failed to comply with a statutory duty to assess and collect taxes on the grounds that the challenge mirrored a claim that public funds were being illegally spent.

Defendants ask us to reconsider and overrule the portion of *Project Extra Mile* holding that taxpayer standing applies in an action brought under § 84-911. They argue that this aspect of *Project Extra Mile* expanded the class of persons who may bring a suit under § 84-911 beyond the express limits set by the Legislature. For reasons explained below, we agree.

As noted above, the Nebraska Constitution does not contain a provision analogous to the U.S. Constitution's limitation of the jurisdiction of federal courts to "cases" and "controversies." Accordingly, the Nebraska Legislature may, so long as it acts within the bounds of other constitutional provisions, confer standing that is broader than the common-law baseline. For example, we have held that the Legislature conferred standing on "'[a]ny citizen of this state'" to bring a challenge under the Open Meetings Act. See *Schauer v. Grooms*, 280 Neb. 426, 441, 786 N.W.2d 909, 922 (2010), quoting Neb. Rev. Stat. § 84-1414(3) (Cum. Supp. 2004) (emphasis omitted).

But just as the Legislature can provide for standing that is broader than common-law standards, so too can it provide for more specific or more restrictive standing requirements. For example, in *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013), we held that the plaintiffs did not have standing to bring an action for judicial dissolution of a

- 298 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
GRIFFITH v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 304 Neb. 287

corporation under the Business Corporation Act. Our analysis did not turn on common-law standing principles. Instead, we held that the text of the statute at issue allowed for such actions to be brought by "'a shareholder,'" but that the plaintiffs did not qualify as such. 285 Neb. at 926, 830 N.W.2d at 479, quoting Neb. Rev. Stat. § 21-20,162(2)(a) (Reissue 2012).

As we discussed above, the Legislature specifically provided who may seek relief under § 84-911(1): those whose "legal rights or privileges" are impaired or threatened by the challenged regulation. We stated in *Project Extra Mile* that the language of § 84-911 "[g]enerally . . . requires a plaintiff to have common-law standing . . . ." 283 Neb. at 385, 810 N.W.2d at 157. We then went on to consider whether standing was present under a common-law exception to the usual injury-in-fact requirement. See, also, *Thompson*, 289 Neb. at 814, 857 N.W.2d at 747 (describing taxpayer standing as "exception to the injury-in-fact requirement").

But, in fact, § 84-911 makes no reference to common-law standing. Neither does *H.H.N.H., Inc. v. Department of Soc. Servs.*, 234 Neb. 363, 451 N.W.2d 374 (1990), the sole case cited in *Project Extra Mile* for the proposition that § 84-911 tracks our common-law standing doctrine. Rather than incorporating the entirety of our common-law standing jurisprudence, both general rules and exceptions alike, the language of § 84-911 is framed in injury-in-fact terms: to have standing, a plaintiff must show his or her legal rights or privileges are or will be affected or impaired by the challenged regulation. The statute does not mention exceptions. And since the Legislature expressly limited the class of permissible plaintiffs under § 84-911 to those who can demonstrate an injury in fact tied to the regulation, it is not clear what authority this court had in *Project Extra Mile* to expand that class of permissible plaintiffs to include those that have standing under a common-law exception to the injury-in-fact requirement.

If forced to defend our recognition of standing under a common-law exception to the injury-in-fact requirement

in *Project Extra Mile*, one might attempt an argument that § 84-911 is not so clearly limited to those plaintiffs who can demonstrate an injury in fact and that this court merely construed statutory ambiguity to allow plaintiffs to proceed under a common-law exception. But even if such an argument might have some merit in another context, it fails to reckon with another issue we did not consider in *Project Extra Mile*: the fact that § 84-911 is a waiver of the State's sovereign immunity. See, e.g., *Logan v. Department of Corr. Servs.*, 254 Neb. 646, 578 N.W.2d 44 (1998). Our rules of construction require us to strictly construe such statutes in favor of the sovereign and against the waiver. See *Rouse v. State*, 301 Neb. 1037, 921 N.W.2d 355 (2019). This leaves no room for finding a waiver "'beyond what the [statutory] language requires.'" *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S. Ct. 3274, 77 L. Ed. 2d 938 (1983), quoting *Eastern Transp. Co. v. United States*, 272 U.S. 675, 47 S. Ct. 289, 71 L. Ed. 472 (1927).

It is certainly not the case that § 84-911 *must* be read to permit suits brought by plaintiffs proceeding under only a common-law exception to the injury-in-fact requirement. Accordingly, our obligation to strictly construe § 84-911 against such a waiver of the State's sovereign immunity leads us to conclude that § 84-911 cannot be interpreted to allow such suits. We overrule *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 810 N.W.2d 149 (2012), to the extent it recognized common-law exceptions to injury-in-fact standing in an action brought under § 84-911.

Because § 84-911 confers standing on only those individuals who can demonstrate an injury in fact as a result of the challenged regulation, these Plaintiffs lack standing. They seek to challenge the Execution Protocol, but they are not subject to death sentences. The only injury in fact they claim to have suffered is a procedural injury in the course of the regulation-making process. As we have explained, that is insufficient to proceed in an action brought under § 84-911.

## CONCLUSION

Our decision today does not speak to the merits of Plaintiffs' claims regarding the adoption of the Execution Protocol or to the Execution Protocol more generally. Instead, we find that the district court correctly dismissed the action without reaching the merits, because Plaintiffs lack standing under § 84-911 to bring the claims they have asserted. We therefore affirm the district court's dismissal for lack of subject matter jurisdiction.

AFFIRMED.

FREUDENBERG, J., not participating.

MILLER-LERMAN, J., concurring.

Because we did not fully impose the limitations occasioned by the waiver of sovereign immunity contained in Neb. Rev. Stat. § 84-911 (Reissue 2014) in the case *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 810 N.W.2d 149 (2012), I concur in the opinion of the court and the decision that these plaintiffs lack standing.

With respect to a suitable challenge to the adoption and substance of the "Execution Protocol," I note that in the defendants' brief, they state, "[O]ther persons . . . with a personal stake in the application of the Execution Protocol exist: those on Nebraska's death row," and "the Execution Protocol affects only those with death sentences." Brief for appellees at 11,12. Thus, I understand that the defendants acknowledge that upon a showing of relevant facts, those persons who have received a death sentence have been impacted by the substance of the Execution Protocol.

Further, at oral argument, the defendants were asked, "Anybody on death row can say the process was imperfect?" to which the defendants replied, "I do think they could." And the defendants added, "Could someone who is impacted by a regulation bring a challenge about a procedural violation that they did not personally witness? And I think the answer [would be] yes." And finally, when asked, based on § 84-911

under discussion, whether a death row inmate who would not have "receive[d] notice from the Attorney General's office that we will soon seek a death warrant" could assert a claim, the defendants replied, "I do think they could."

Based on their position articulated in briefing and at oral argument, the defendants indicated that death row inmates are potential plaintiffs under § 84-911 both as to the procedure by which the Execution Protocol was adopted and its substance. So the propriety of the adoption and substance of the Execution Protocol may not go unchallenged.